Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/13/2020 08:10 AM CST

State of Nebraska, appellee, v.
Nathaniel J. Dixon, appellant.

___ N.W.2d ___

Filed August 21, 2020.    No. S-19-578.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** When reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Property: Appeal and Error.** A trial court's finding that an item of personal property has been abandoned is reviewed for clear error.

3. **Criminal Law: Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

4. **Constitutional Law: Property: Warrantless Searches.** A defendant has no Fourth Amendment privacy interest in personal property which has been abandoned or discarded, and such property may be searched without a warrant.

5. **Constitutional Law: Search and Seizure.** Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.

6. ____: ____. A search for Fourth Amendment purposes occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable.

7. **Constitutional Law: Property: Search and Seizure.** Once a defendant abandons an item of personal property and makes it available to the

police or the public, he or she does not retain a reasonable expectation of privacy in the property for purposes of Fourth Amendment protection.

8. **Constitutional Law: Property: Search and Seizure: Police Officers and Sheriffs: Proof.** To show abandonment of personal property for purposes of the Fourth Amendment, the State must establish by a preponderance of the evidence that the defendant's voluntary words or conduct would lead a reasonable officer to believe the defendant relinquished his or her property interests in the item.

9. **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

10. **Motions to Dismiss: Directed Verdict: Waiver: Appeal and Error.** A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict but may still challenge the sufficiency of the evidence.

11. **Motions to Dismiss: Directed Verdict: Convictions.** Whether styled as a motion to dismiss, a motion for directed verdict, or a motion for judgment of acquittal, such a motion made at the close of all the evidence challenges the sufficiency of the State's evidence to sustain the conviction.

12. **Evidence: Appeal and Error.** An appellate court does not resolve conflicts in the evidence, pass on credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.

13. **Theft: Value of Goods: Proof.** In a theft case, the value to be proved is market value at the time and place where the property was criminally appropriated.

14. **Value of Goods: Proof.** There is no better way of showing the market value of any article than the price at which it and others of its class are being offered and sold on the market.

15. **Value of Goods: Evidence.** Evidence of price, when determined by and reflective of current market conditions for the sale of an item, may be admissible on the issue of value.

16. **Criminal Law: Value of Goods.** The owner of chattels may testify as to their value in a criminal case.

17. **Theft: Value of Goods: Evidence: Proof.** An item's market value at the time of the theft may be established by either direct or circumstantial evidence, and it presents a question of fact to be resolved by the fact finder.

18. **Theft: Value of Goods: Appeal and Error.** When a fact finder determines the value of property in a theft case, an appellate court will not set aside the finding unless it is clearly erroneous.

Appeal from the District Court for Sarpy County: George A. Thompson, Judge. Affirmed.

Thomas P. Strigenz, Sarpy County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

Nathaniel J. Dixon was convicted by a jury of one count of burglary and one count of theft by receiving stolen property. In this direct appeal, he challenges the denial of his motion to suppress evidence discovered in a warrantless search of a backpack he discarded in a ditch. He also challenges the admissibility and sufficiency of the State's evidence pertaining to the value of the stolen property. Finding no merit to his assignments of error, we affirm.

## I. FACTS

### 1. Burglary

On August 2, 2017, police in Papillion, Nebraska, were notified of a burglary at a Papillion residence. Police investigated and found numerous items of jewelry missing from the master bedroom.

About an hour before the burglary was reported, police had received several reports of a suspicious male jumping fences in the area near where the burglary occurred. Police obtained a description of the suspect but were not able to locate him. Police did find a suspicious vehicle parked in the area with the windows down and keys in the ignition. Police

determined the vehicle had been reported stolen by a woman who Dixon was dating at the time.

## 2. Arrest

The day after the burglary, police received a report that someone who matched the description of the burglary suspect was walking near a school in La Vista, Nebraska. Capt. Brian Waugh of the police department in La Vista was near the area and saw an individual matching the suspect's description, wearing a ball cap and carrying a backpack. Waugh watched as the individual, later identified as Dixon, walked toward him. When Dixon was approximately 25 yards away, he appeared to notice Waugh, who was standing near his marked patrol car. Dixon "abruptly" entered a nearby drainage ditch which was 4 or 5 feet deep, causing Waugh to temporarily lose sight of him. When Waugh saw Dixon emerge from the ditch, Dixon was no longer wearing either the cap or the backpack.

Waugh made contact with Dixon and asked him where he was going. Dixon said he was going home, but did not give a street address. At that time, Papillion police officers arrived on the scene, and the officers' interaction with Dixon thereafter was recorded on the officers' body and cruiser cameras.

One of the Papillion officers was Kurt McClannan. Without Dixon's knowing, Waugh informed McClannan that he had seen Dixon enter the ditch with a backpack and come out without one. While McClannan was talking with Dixon, Dixon asked, "Can I get my stuff?" and McClannan responded, "Do you have a backpack?" Dixon pointed toward the ditch and said, "Yeah its over there." Dixon said he had gone into the ditch because he had seen police. An officer went to retrieve the backpack, and when he brought it back, Dixon again stated it was his and told the officers they did not have his permission to search it. McClannan asked why Dixon left his cap in the ditch and did not go back for it. Dixon said that he fell and that his hat fell off and he did not realize it. Officers returned Dixon's hat, but searched the backpack.

The backpack contained a pillowcase tied in a knot that was full of a "big ball of jewelry" all tangled together. Dixon was placed under arrest. He was subsequently charged with burglary, a Class IIA felony,[1] and theft by receiving stolen property with a value of more than $1,500 but less than $5,000, a Class IV felony.[2] The information also charged that Dixon was a habitual criminal.[3]

### 3. Motion to Suppress

Dixon moved to suppress the evidence found during the search of the backpack. After an evidentiary hearing at which the above-described evidence was admitted, the district court denied the motion. It reasoned Dixon had no Fourth Amendment privacy expectation in the backpack because he had abandoned the backpack before the search.

### 4. Trial

The case proceeded to trial. As relevant to the issues on appeal, the State introduced evidence about each piece of jewelry found in the backpack, including its value.

The owner of the home that was burglarized testified about each piece of jewelry found in the backpack. She identified all pieces as belonging to her, and explained she had received some as gifts and had purchased others herself. She estimated the collective value of the jewelry at $2,000.

The State also adduced evidence of the jewelry's appraised value from John Dineen, the general manager of a pawnshop that deals in secondhand jewelry and other items. Dineen testified he is an experienced jewelry appraiser who, for the prior 16 years, had conducted 5 to 10 jewelry appraisals each week.

Dineen appraised all 72 items of jewelry and prepared a report styled as an "Appraisal Certificate," which stated

---

[1] Neb. Rev. Stat. § 28-507 (Reissue 2016).

[2] Neb. Rev. Stat. § 28-518(2) (Reissue 2016).

[3] Neb. Rev. Stat. § 29-2221 (Reissue 2016).

he had "carefully examined the articles listed below and appraised those articles [at] current fair market replacement value." The report described each item of jewelry and listed its appraised value. Most of the 72 items in Dineen's appraisal were valued between $15 and $40, and collectively, the items were appraised at a value of $1,561.50. The appraised values were based on Dineen's inspection of the items and included consideration of the size and quality of the items.

Dineen testified the appraised value of each item was "[p]retty darn close" to the price the item would sell for in the retail market, including stores such as "Kohl's and Walmart." He regularly referred to this as the "retail value" or the "fair market value" of the jewelry items. Dineen also testified that the "wholesale value" of the items would be less, and he admitted that if he were to sell the items at his pawnshop, he would list them for "a lot less."

Dixon objected to the admission of Dineen's appraisal report, but did not move to strike Dineen's opinion testimony. Regarding the appraisal report, Dixon argued it was inadmissible because it focused on the price of the items rather than their value. The trial court overruled the objection and admitted the appraisal report, reasoning that Dineen had testified about "two views" of value and ultimately the value of the items was a fact question for the jury to determine.

At the close of the State's evidence, Dixon moved to dismiss the theft by receiving stolen property charge, arguing the State had failed to prove the property had a value of $1,500 or more. The district court overruled the motion, noting the State had adduced evidence of value from both the owner of the jewelry and from Dineen and stating, "roughly speaking, at this juncture [there are] three different valuations of the items" which presented a question for the jury.

Dixon proceeded to put on a defense, after which he renewed his motion to dismiss the theft charge without additional argument. That motion was also overruled.

## 5. Verdict and Sentencing

The jury was given a verdict form on which it was directed to circle either "[g]uilty" or "[n]ot [g]uilty" for each count charged. The verdict form further directed the jury, if it found Dixon guilty of theft by receiving stolen property, to find the value of the property by circling one of the following: "$1,500.00 to $4,999.99,"[4] "$500.00 to $1,499.99,"[5] or "$0.01 to $499.99."[6] The jury returned the verdict form finding Dixon guilty of both burglary and theft by receiving stolen property and finding the value of the property was $1,500 to $4,999.99.

After an enhancement hearing, Dixon was found to be a habitual criminal. He was sentenced to 20 to 30 years' imprisonment on the conviction for burglary and to 20 to 30 years' imprisonment on the conviction for theft by receiving stolen property. The sentences were ordered to run concurrently.

Dixon timely appealed. We moved the case to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Dixon assigns the district court erred in (1) overruling his motion to suppress the contents of his backpack, (2) overruling his objection to the admission of Dineen's appraisal report, and (3) overruling his motion to dismiss the charge of theft by receiving stolen property.

## III. STANDARD OF REVIEW

[1] When reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review.[7] Regarding historical facts, an appellate court reviews the trial

---

[4] See § 28-518(2).

[5] See § 28-518(3).

[6] See § 28-518(4).

[7] *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019).

court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[8]

[2] A trial court's finding that an item of personal property has been abandoned is reviewed for clear error.[9]

[3] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[10]

## IV. ANALYSIS

### 1. Motion to Suppress

Dixon argues it was clear error for the trial court to find he had abandoned his backpack when he left it in the ditch. He generally concedes that Fourth Amendment privacy protections do not extend to personal property that has been abandoned,[11] but he argues it is "impossible"[12] to find he abandoned the backpack because he affirmatively claimed the backpack in the ditch was his. According to Dixon, the fact that he did not deny ownership of the backpack prevents a finding that he abandoned the property. We disagree.

[4] This court has generally recognized that a defendant has no Fourth Amendment privacy interest in personal property which has been abandoned or discarded, and such property

---

[8] *Id.*

[9] See *U.S. v. Crumble*, 878 F.3d 656 (8th Cir. 2018).

[10] *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016).

[11] See, e.g., *Abel v. United States*, 362 U.S. 217, 80 S. Ct. 683, 4 L. Ed. 2d 668 (1960); *Hester v. United States*, 265 U.S. 57, 44 S. Ct. 445, 68 L. Ed. 898 (1924).

[12] Brief for appellant at 5.

may be searched without a warrant.[13] The Nebraska Court of Appeals has also recognized and applied this principle.[14] But so far, neither Nebraska appellate court has articulated a test for determining when personal property has been abandoned for purposes of Fourth Amendment protection.

The trial court relied on two federal appellate cases, *U.S. v. Nowak*[15] and *U.S. v. Basinski*,[16] both of which articulated tests for determining when personal property is abandoned for Fourth Amendment purposes. We discuss those cases next and, ultimately, adopt a similar framework for determining when property has been abandoned.

### (a) Determining When Property Is Abandoned

[5-7] Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.[17] A search for Fourth Amendment purposes occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable.[18] But it is well-settled that once a defendant abandons an item of personal property and makes it available

---

[13] See, e.g., *State v. Buckman*, 259 Neb. 924, 613 N.W.2d 463 (2000) (finding no expectation of privacy in discarded cigarette butts); *State v. Wickline*, 232 Neb. 329, 440 N.W.2d 249 (1989) (finding no Fourth Amendment protection for cigarette butt discarded at police station), *disapproved on other grounds, State v. Sanders*, 235 Neb. 183, 455 N.W.2d 108 (1990); *State v. Texel*, 230 Neb. 810, 433 N.W.2d 541 (1989) (finding no expectation of privacy in garbage made accessible to public).

[14] *State v. Vasquez-Arenivar*, 18 Neb. App. 265, 779 N.W.2d 117 (2010) (finding baggie discarded by vehicle passenger while passenger waited for officers to investigate whether driver was intoxicated abandoned); *State v. Cronin*, 2 Neb. App. 368, 509 N.W.2d 673 (1993) (finding baggie discarded by defendant while running from police abandoned).

[15] *U.S. v. Nowak*, 825 F.3d 946 (8th Cir. 2016).

[16] *U.S. v. Basinski*, 226 F.3d 829 (7th Cir. 2000).

[17] *State v. Seckinger*, 301 Neb. 963, 920 N.W.2d 842 (2018).

[18] See *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018).

to the police or the public, he or she does not retain a reasonable expectation of privacy in the property for purposes of Fourth Amendment protection.[19]

In *Basinski*, the Seventh Circuit held:

> To demonstrate abandonment, the government must establish by a preponderance of the evidence that the defendant's voluntary words or conduct would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item searched or seized. . . . Because this is an objective test, it does not matter whether the defendant harbors a desire to later reclaim an item; we look solely to the external manifestations of his intent as judged by a reasonable person possessing the same knowledge available to the government agents. . . . We look at the totality of the circumstances, but pay particular attention to explicit denials of ownership and to any physical relinquishment of the property.[20]

*Basinski* also explained:

> There are three general types of abandonment cases, which are based on these two indicia of abandonment. The first type is characterized by the presence of a fleeing defendant who relinquishes an object to make his flight easier or because discarding the item might make it easier for him to later claim that he never possessed it. . . . Because he has disposed of the property in a location that affords easy access to the public, a reasonable person would believe that the defendant's possessory interest in the property is so eroded that anyone has a right to retrieve it. The second type of case is closely related to the first, for in so-called "garbage cases" the defendant places material in or near a refuse receptacle

---

[19] See, e.g., *California v. Greenwood*, 486 U.S. 35, 108 S. Ct. 1625, 100 L. Ed. 2d 30 (1988); *Buckman, supra* note 13; *Wickline, supra* note 13; *Texel, supra* note 13; *Vasquez-Arenivar, supra* note 14; *Cronin, supra* note 14.

[20] *Basinski, supra* note 16, 226 F.3d at 836-37 (citations omitted).

that is readily accessible to the public, and in which he usually places other discarded materials. . . . By this conduct and the location of the receptacle, the defendant leads reasonable people to believe that he no longer cares what becomes of his trash, or articles mistaken for trash. In the third type of case, the defendant is usually caught red-handed with or near a container of contraband, whereupon he denies that the container or its contents are his. . . . Taken at face value, this denial makes it reasonable to conclude that the defendant claims no possessory interest in the items.[21]

Similarly, the Eighth Circuit explained in *Nowak* how courts are to determine when personal property is abandoned:

Whether property has been abandoned "is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent." . . . We consider the dual factors of whether the defendant physically relinquished his property and whether he denied ownership of it. . . . However, a verbal denial of ownership is not necessary for a finding of abandonment, and we reach our ultimate conclusion based on the totality of the circumstances.[22]

*Nowak* further held that "[w]hether property is discarded in a public, private, or semi-private place is a factor in considering whether the property has been abandoned . . . ."[23]

[8] We agree with the reasoning of *Basinski* and *Nowak*, and we adopt a similar test for determining abandonment. We now hold that to show abandonment of personal property for purposes of the Fourth Amendment, the State must establish by a preponderance of the evidence that the defendant's voluntary words or conduct would lead a reasonable officer to believe the defendant relinquished his or her property interests

---

[21] *Id*. at 837 (citations omitted).

[22] *Nowak, supra* note 15, 825 F.3d at 948 (citations omitted).

[23] *Id*. at 949.

in the item.[24] This is an objective test based on the information available to the officer, and the defendant's subjective intent to later reclaim the item is irrelevant.[25] When determining whether property has been abandoned, courts consider the totality of the circumstances, and pay particular attention to the nature and location of any physical relinquishment of the property and any explicit denials of ownership.[26] We note this test is, in substance, the test applied by the district court in this case.

### (b) No Clear Error in Finding
### Dixon Abandoned Backpack

Applying the test announced above, we conclude the district court did not clearly err in finding that Dixon abandoned his backpack.

Upon seeing police, Dixon entered a drainage ditch next to the road, an area generally open to the public, and left his backpack there. His action in doing so would cause a reasonable person in the position of the investigating officers to conclude he was physically relinquishing the backpack to make it easier for him to later claim that he never possessed it.[27] In this respect, his action is similar to those at issue in *State v. Vasquez-Arenivar*[28] and *State v. Cronin*,[29] where the defendants

---

[24] See, *Nowak, supra* note 15; *Basinski, supra* note 16. See, also, e.g., *State v. Garcia*, 302 Neb. 406, 923 N.W.2d 725 (2019) (recognizing Fourth Amendment probable cause determination based on objective reasonable officer standard).

[25] *Nowak, supra* note 15; *Basinski, supra* note 16. See, also, e.g., *State v. Krannawitter*, 305 Neb. 66, 939 N.W.2d 335 (2020) (recognizing Fourth Amendment reasonable suspicion and probable cause determinations both involve consideration of totality of circumstances).

[26] *Nowak, supra* note 15; *Basinski, supra* note 16.

[27] See *Basinski, supra* note 16. See, also, *California v. Hodari D.*, 499 U.S. 621, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991); *Hester, supra* note 11.

[28] *Vasquez-Arenivar, supra* note 14.

[29] *Cronin, supra* note 14.

discarded incriminating substances once they encountered police, and the Court of Appeals found obvious abandonment. Further, because Dixon disposed of the backpack in a location accessible to the general public and walked away, a reasonable person would believe that his possessory interest in the property was so eroded that anyone had a right to retrieve it.[30] Viewed objectively, Dixon's action of discarding the backpack in the ditch upon seeing a police officer is strong evidence of intent to physically relinquish the backpack.[31] And while it is true that Dixon did not deny ownership of the backpack once it was discovered and retrieved by police, that is just one of many factors to be considered in the totality analysis and does not, as Dixon suggests, necessarily preclude a finding of abandonment.

Considering the totality of the circumstances, we find the trial court did not clearly err in finding Dixon abandoned the backpack and thus had no Fourth Amendment privacy interest in it. His motion to suppress the evidence found as a result of the search of the backpack was properly denied, and his first assignment of error has no merit.

## 2. THEFT BY RECEIVING STOLEN PROPERTY

Dixon's second and third assignments of error both pertain to the conviction for theft by receiving stolen property. Theft by receiving stolen property is prohibited by Neb. Rev. Stat. § 28-517 (Reissue 2016), which provides: "A person commits theft if he receives, retains, or disposes of stolen movable property of another knowing that it has been stolen, or believing that it has been stolen, unless the property is received, retained, or disposed with intention to restore it to the owner."

---

[30] See *Basinski, supra* note 16. See, also, *Hodari D., supra* note 27; *Hester, supra* note 11.

[31] Accord, *Vasquez-Arenivar, supra* note 14; *Cronin, supra* note 14.

Section 28-518(1) through (4) grades theft offenses as either misdemeanors or felonies depending on the value of the property involved. Summarized, under § 28-518, the lowest offense grade is a Class II misdemeanor and the highest offense grade is a Class IIA felony; the offense grades increase as the value of the property at issue increases. Under this framework, and given the jury's finding on the value of the stolen jewelry, Dixon's conviction is a Class IV felony.

### (a) Admissibility of Appraisal Report

Dixon's second assignment of error states the district court erred in admitting Dineen's appraisal report. However, his brief presents no argument specific to this assignment. Instead of arguing why the report was inadmissible under the rules of evidence, his brief argues only that the report was insufficient to prove value and that therefore, the State failed to meet its burden of proving all the elements of theft by receiving stolen property.

[9] To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.[32] Because Dixon did not present any factual or legal argument to support his contention that it was error to admit the appraisal report, we do not consider this assignment.

### (b) Sufficiency of Evidence

[10] Dixon's third assignment of error argues the district court erred in overruling his motion to dismiss. As noted, Dixon moved to dismiss both at the close of the State's evidence and at the close of all evidence. It is well settled that a defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution and who, when the court overrules the dismissal

---

[32] *State v. Dady*, 304 Neb. 649, 936 N.W.2d 486 (2019).

or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict but may still challenge the sufficiency of the evidence.[33]

Here, Dixon proceeded with trial and introduced evidence after the denial of his motion to dismiss. He has therefore waived his claim that the district court erred in overruling his initial motion to dismiss. But when a defendant makes a motion at the close of the State's case in chief and again at the conclusion of all the evidence, it is proper to assign as error that the defendant's motion to dismiss made at the conclusion of all the evidence should have been sustained.[34] We therefore consider Dixon's third assignment of error only to the extent it relates to his motion to dismiss at the close of all the evidence. And as explained below, we treat his motion as a challenge to the sufficiency of the evidence.

[11] A motion to dismiss at the close of all the evidence has the same legal effect as a motion for a directed verdict.[35] And a motion for directed verdict is simply another name for a motion for judgment of acquittal.[36] All three motions assert that the defendant should be acquitted of the charge because there is no legally sufficient evidentiary basis on which a reasonable jury could return a guilty verdict.[37] Thus, however styled, this type of motion made at the close of all the evidence challenges the sufficiency of the State's evidence to sustain the conviction.[38]

---

[33] *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020); *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019).

[34] *State v. Savage*, 301 Neb. 873, 920 N.W.2d 692 (2018).

[35] *State v. Combs*, 297 Neb. 422, 900 N.W.2d 473 (2017).

[36] See *id*.

[37] See *id*.

[38] See *id*.

[12] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[39] An appellate court does not resolve conflicts in the evidence, pass on credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[40]

As stated, Dixon's argument regarding the insufficiency of the evidence focuses exclusively on the evidence regarding the value of the stolen jewelry. We understand his argument to be that the State's evidence focused on price, rather than "market value" as that concept has been defined in our cases, and so, there was no competent evidence to support the jury's finding that the stolen jewelry had a value of at least $1,500. Dixon argues this requires reversal of his conviction for theft by receiving stolen property. There are two problems with his argument.

### (i) No Threshold Value Needed
### to Sustain Conviction

First, Dixon is incorrect that insufficient evidence of market value would require a reversal of his conviction. Section 28-518(8) states that "[i]n any prosecution for theft under sections 28-509 to 28-518, value shall be an essential element of the offense that must be proved beyond a reasonable doubt." But in *State v. Almasaudi*,[41] we held that the statutory language of § 28-518(8) requires only that some value be proved beyond a reasonable doubt, not that a particular threshold value be proved. Stated differently, § 28-518(8)

---

[39] *Olbricht, supra* note 10.

[40] *Ferrin, supra* note 33; *Olbricht, supra* note 10.

[41] *State v. Almasaudi*, 282 Neb. 162, 802 N.W.2d 110 (2011).

requires proof of a specific value only so the offense may be classified for purposes of punishment, but no specific value must be proved for the theft conviction to be sustained.[42] Thus, even if the evidence in the record before us failed to support the specific value found by the jury here, such insufficiency would result only in a reduction in the offense grade and a remand for resentencing, not a reversal of the conviction for theft by receiving stolen property.[43] And importantly, Dixon has not challenged the gradation of his offense either in his motions before the district court or in his argument on appeal.

### (ii) Sufficient Evidence of Value

Additionally, there is simply no merit to Dixon's suggestion that the evidence adduced at trial—which consisted of both the property owner's testimony as to value and expert testimony as to value—was insufficient to support the jury's finding regarding the value of the property for purposes of grading the offense. Dixon's argument in this regard is that "the State sought only to prove the value of the goods by testimony relating to their price"[44] and that there was "no testimony presented regarding the condition of the jewelry that may have caused its value to differ [from] its purchase price."[45] His argument mischaracterizes both our case law on establishing value in theft cases generally, and the State's evidence of value in this case.

[13,14] We have long held that in a theft case, the value to be proved is market value at the time and place where the

---

[42] See *id.*

[43] See *id.* Accord, *State v. Gartner*, 263 Neb. 153, 638 N.W.2d 849 (2002) (theft conviction affirmed, but matter remanded for resentencing); *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992) (shoplifting conviction affirmed, but matter remanded for resentencing).

[44] Brief for appellant at 7.

[45] *Id.* at 8.

property was criminally appropriated.[46] And we have often observed, "There is no better way of showing the market value of any article than the price at which it and others of its class are being offered and sold on the market."[47]

In *State v. Gartner*,[48] a former county assessor was convicted of multiple counts of theft after an audit of his office showed several items of property purchased by the office were missing. The missing items, which included a file cabinet, a fax modem, a fax machine, an inkjet printer, and a digital camera, were later found in the defendant's possession. Based on the items' values as determined by the jury, some of the defendant's convictions were graded as Class IV felonies, and others were graded as Class II misdemeanors. On appeal, the defendant challenged the sufficiency of the evidence as it pertained to the jury's findings of value.

Several of the items had been purchased new from a retail store shortly before they were stolen, and we held that evidence of the retail purchase price was sufficient to prove value because it showed both the price at which those items had been offered for sale and the price at which the items were sold. But the fax machine had been stolen about 7 months after it was purchased, and with respect to that item, we held that evidence of the purchase price alone was insufficient to prove its market value on the date it was stolen. We explained that under those circumstances, "The value of the stolen property . . . may be established by proof of the original cost of the item reduced to reflect the actual condition of the property, in terms of how long it has been used and its state of utility or damage."[49] And we emphasized that

---

[46] *Gartner, supra* note 43; *Garza, supra* note 43.

[47] *Gartner, supra* note 43, 263 Neb. at 163, 638 N.W.2d at 859. Accord *Garza, supra* note 43 (Boslaugh, J., dissenting).

[48] *Gartner, supra* note 43.

[49] *Id.* at 165, 638 Neb. at 860.

evidence of purchase price, together with evidence concerning the age, condition, and utility of the item, may afford a basis for determining market value.[50] Because there was no evidence presented in *Gartner* regarding the condition of the fax machine at the time of the theft, we found the evidence of purchase price alone was insufficient to support the jury's finding of value. We thus set aside the felony gradation as to that count and remanded the matter for resentencing as a Class II misdemeanor.

We also addressed evidence of the jury's value finding in *State v. Garza*.[51] There, we held that photographs of price tags on items stolen from a retail store, without more, were insufficient to prove the value of those items for purposes of grading the defendant's shoplifting conviction. Our opinion suggested "an important distinction"[52] between the concepts of price and value, reasoning:

> [P]rice is the amount that a willing seller indicates as acceptable payment for an article offered for sale, whereas value, in relation to a theft charge, is the price obtainable for property offered for sale in a market. Consequently, a price tag merely expresses the amount at which a seller offers an article for sale, a sum the seller hopes to obtain, and does not necessarily indicate the amount obtainable in the market through payment for the article offered for sale.[53]

[15] But in *Garza*, we also cautioned that our reasoning should not be misconstrued to suggest that "a price tag, reflecting a seller's expression of the price for a sale, is never evidence of value."[54] We stated that "[e]vidence of price, when

---

[50] See *id.*

[51] *Garza, supra* note 43.

[52] *Id.* at 264, 487 N.W.2d at 557.

[53] *Id.*

[54] *Id.* at 265, 487 N.W.2d at 557.

determined by and reflective of current market conditions for the sale of an item, may be admissible on the issue of value."[55] Because the evidence in *Garza* consisted of nothing but the price tags, we found it was insufficient to support the felony gradation of the shoplifting conviction and we remanded the matter for resentencing as a Class II misdemeanor. One justice dissented in *Garza*, reasoning that in a retail setting, uncontroverted evidence of the price at which the merchandise was offered for sale is more than sufficient to permit the finder of fact to determine the retail value of the property for purposes of grading the offense.[56]

We take this opportunity to revisit one aspect of the majority opinion in *Garza* we think was incorrect: our statement that the price tag evidence offered by the State "was irrelevant to the issue of value for the property taken by [the defendant] and should have been excluded pursuant to [the defendant's] relevance objection."[57] *Garza* reasoned the price tag evidence was irrelevant because it showed only the seller's asking price for the item, and not the ultimate purchase price. But this was not a problem of relevancy.

Relevant evidence means evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence.[58] It seems obvious that the price at which an item is offered for sale generally reflects the seller's opinion of the item's market value, and while that is certainly not conclusive evidence of the item's market value,

---

[55] *Id*.

[56] See *Garza, supra* note 43 (Boslaugh, J., dissenting). Accord *State v. Ybarra*, 9 Neb. App. 230, 609 N.W.2d 696 (2000) (Sievers, Judge, concurring) (suggesting Nebraska Supreme Court reconsider this aspect of *Garza*), *disapproved on other grounds, Gartner, supra* note 43.

[57] *Garza, supra* note 43, 241 Neb. at 264, 487 N.W.2d at 557.

[58] Neb. Rev. Stat. § 27-401 (Reissue 2016).

it is nevertheless relevant evidence.[59] To the extent our opinion in *Garza* suggested otherwise, it is expressly disapproved.

Dixon relies on our holding in *Garza* to argue that the evidence adduced here, which he suggests was limited to the price at which the jewelry would be offered for sale, was insufficient to support the jury's finding of value. We disagree.

[16] First, his argument ignores the testimony of the owner of the jewelry, who valued the items collectively at $2,000. It has long been the rule in Nebraska that the owner of chattels may testify as to their value in a criminal case.[60]

Moreover, Dixon's argument misconstrues the nature of the expert appraisal evidence in this case. Dineen appraised each piece of jewelry individually, and his opinion on the fair market value of the jewelry was not based just on the price at which similar items might be offered for sale in either a retail or a wholesale setting. To the contrary, it included consideration of the condition of each item as well as what buyers in the area were willing to pay for the item.

---

[59] See, e.g., *State v. Jerrome*, 233 W. Va. 372, 758 S.E.2d 576 (2014) (holding market value of stolen items may be proved by evidence of price, replacement cost, or owner's belief as to value; weight to be given is for trier of fact); *State v. Downing*, 2002 S.D. 148, 654 N.W.2d 793 (2002) (disapproving of reasoning in *Garza* and adopting majority view that evidence of price tag on stolen good is admissible as seller's opinion of value); *Robinson v. Com.*, 258 Va. 3, 516 S.E.2d 475 (1999) (finding price tags affixed to items offered for sale admissible as evidence of items' value in shoplifting case); *Calbert v. State*, 99 Nev. 759, 670 P.2d 576 (1983) (holding price tags attached to goods at time of theft are competent evidence of value); *State v. McDonald*, 312 Minn. 320, 251 N.W.2d 705 (1977) (reasoning evidence of price tag on stolen item ordinarily sufficient to show market value but is not conclusive when asking price does not accurately reflect market value); *State v. Sorrell*, 95 Ariz. 220, 388 P.2d 429 (1964) (finding evidence of retail price of stolen goods admissible to show value); *Morris v. State*, 334 P.3d 1244 (Alaska App. 2014) (finding retail price of stolen item is prima facie evidence of item's market value but wholesale price may also be relevant).

[60] See, e.g., *Almasaudi, supra* note 41.

[17,18] We pause here to emphasize that our cases discussing the type of evidence which is sufficient to prove market value should not be construed either to require expert testimony of an item's market value or to exclude evidence of purchase price and other evidence that may be relevant to determining market value. As we recognized in *Gartner*, an item's market value at the time of the theft may be established by either direct or circumstantial evidence, and it presents a question of fact to be resolved by the fact finder.[61] And when a fact finder determines the value of property in a theft case, an appellate court will not set aside that finding unless it is clearly erroneous.[62]

Here, there was both expert testimony regarding the appraised value of the stolen jewelry and testimony from the owner as to the value of the jewelry. Both the expert's testimony and the owner's testimony set the value of the stolen jewelry above $1,500. While there was also evidence that the wholesale value of the jewelry was less than $1,500, there nevertheless was sufficient, competent evidence from which the jury could find the market value of the stolen property was at least $1,500.

We conclude the jury's finding regarding value was supported by sufficient evidence and was not clearly erroneous. Dixon's third assignment of error has no merit.

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

---

[61] See *Gartner, supra* note 43.

[62] See *Garza, supra* note 43.