IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
**(Memorandum Web Opinion)**

STATE V. KENNEDY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CRYSTAL M. KENNEDY, APPELLANT.

Filed February 16, 2021.    No. A-20-401.

Appeal from the District Court for Red Willow County: JAMES E. DOYLE IV, Judge. Affirmed.

James R. Korth, of Reynolds, Korth & Samuelson, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

MOORE, Judge.

### INTRODUCTION

Crystal M. Kennedy appeals from a judgment in the District Court for Red Willow County, convicting her of Theft By Unlawful Taking (Greater Than $5,000), a Class IIA felony. Kennedy challenges the sufficiency of the evidence regarding the theft and the value of the items allegedly stolen. For the following reasons, we affirm.

### BACKGROUND

An information filed on July 19, 2019, charged Kennedy with theft pursuant to Neb. Rev. Stat. § 28-511 (Reissue 2016), constituting a Class IIA felony under Neb. Rev. Stat. § 28-518 (Reissue 2016). The information alleged that Kennedy did unlawfully take, or exercise control over movable property of Ryan R. Wilcox with the intent to deprive him thereof, to wit: a safe and contents valued at more than five thousand dollars ($5,000.00). A bench trial was held on January 28, 2020. The following evidence was presented at trial.

- 1 -

Kennedy and Wilcox were married on January 30, 2019, in Colorado. Kennedy maintained homes in both Pritchett, Colorado, and Hoxie, Kansas. Wilcox is an attorney with an office in McCook, Nebraska, and he also runs a shop dealing in collectible coins.

Following the marriage, Kennedy stayed with Wilcox at his home in Indianola, Nebraska, for a few days. During this time, Kennedy moved some items into Wilcox's house including clothes, a makeup bag, a television, and some lamps. Wilcox testified that after his marriage to Kennedy, their relationship quickly deteriorated. Wilcox testified that on February 8, 2019, the parties agreed to get a divorce. On the same day, Wilcox gifted some coins to Kennedy's daughters. Early in the morning the following day, Kennedy decided to return to her home in Colorado, taking her belongings that she had moved into Wilcox's home with her. Wilcox gave Kennedy $300 in cash from a safe in his home to fund her travels, and testified that the contents of the safe in his home had not been disturbed at that time.

Wilcox testified that later the same afternoon, Kennedy called him and demanded that he pay for another trip for her, and threatened to make false claims about him if he did not comply. Wilcox refused to give Kennedy more money. Wilcox testified that later that evening, he awoke around 10:00 p.m. to Kennedy standing in his bedroom and telling him she wanted to work on their marriage. Wilcox agreed to let Kennedy stay at his home through the weekend.

Wilcox testified that on Monday, February 11, 2019, when he was getting ready for work, the safe was still in his closet. Before Wilcox went to work, he walked to a convenience store to buy coffee. Later that morning, after Wilcox had returned to his house, he and Kennedy had an argument. Kennedy left Wilcox's home. Wilcox testified that as Kennedy was driving away, she told him "you can keep the TV or something -- we're even now." After Kennedy left, Wilcox discovered that the safe in his closet was missing. Wilcox called the sheriff's office to report the theft.

Chief Deputy Sherriff Joe Koetter and Deputy Sheriff Steve Kotschwar arrived at Wilcox's home, where they observed a square indentation on the carpet where Wilcox said that the safe had been. Kotschwar testified that when he arrived, Wilcox expressed concerns that Kennedy took the safe, and informed him that Kennedy lived in Sheridan County, Kansas. Wilcox provided a list of the contents of the safe to Kotschwar a few days later. The deputies applied for and received a search warrant for Kennedy's residence to locate any stolen property belonging to Wilcox. The search warrant specified that the stolen property consisted of the following: the safe; 100-ounce silver bars; three gold US Mint 1-ounce Liberty coins; 1-ounce silver bars; gold pocket watches; any miscellaneous paperwork belonging to Wilcox; Wilcox's Social Security card and those of his children; a Great Western Bank bag; walnut boxes containing eight boxes of five to six ounces of gold; Crown Royal liquor bags containing miscellaneous silver coins; cash rolled up into a $10,000 bank-identified roll; $2,000 in cash rolled into a bank-identified roll; and $1,000 rolled into a bank-identified roll.

At trial, Wilcox described the safe and the owners' manual for the safe was admitted into evidence. Wilcox testified that in the safe, he kept a Great Western Bank bag with both loose and bundled cash inside. Wilcox testified that in the bag, he had $10,000, all in one hundred dollar bills, bundled together. He also testified that he had $500 in fifty dollar bills banded together, $1,000 in one hundred dollar bills banded together, and $2,000 in one hundred dollar bills banded together. In addition, Wilcox estimated there was another $2,500 in loose bills in the bank bag.

Wilcox further testified that he also kept in the safe seven 100-ounce silver bars valued at $15.76 per ounce, twenty 10-ounce silver bars also valued at $15.76 per ounce, bulk silver, bison bars, and bullion bars in various weights; and three Crown Royal liquor bags, two purple and one brown, "full of . . . different kinds of coins." In the bags, Wilcox testified there were twenty silver eagle coins from 2019 valued at $16.76 per coin, a bag full of various silver eagles, two rolls of silver dollars, twenty Canadian maple leaf coins, miscellaneous one-ounce coins, a 1954 half dollar, a 1964 half dollar, several 1953 silver dimes, and various other coins. Wilcox also described a wooden presentation box for the coins that he kept in the safe. Several product description documents were entered into evidence, showing the market value of the items that Wilcox kept in the safe.

Kennedy's home in Kansas was searched on February 16, 2019. During the search, officers found a wooden box; various coins and collectible currency including, thirteen two-dollar bills, four Jefferson nickels, a 1953 silver dime in a cardboard sleeve with writing on it, twenty-three silver dollar coins, a Canadian quarter, a half-dollar coin, two 1943 pennies, a 1963 Mexican coin, a Mexican penny, a scan disk, four buffalo nickels in a square cardboard holder, an uncirculated Lincoln penny, a 1952 wheat penny, ten Susan B. Anthony dollar coins, a gold dollar coin, a Canadian nickel, and several wheat pennies; four cell phones; an iPhone; a computer tower; a money clip, an older pocket watch; and two one-ounce silver bars in Kennedy's garage. Wilcox positively identified all of the items found in Kennedy's home as his and many of the items matched the description of the items Wilcox said he kept in the safe. Photos of the items found in the search were admitted into evidence.

On February 19, 2019, Kotschwar executed a search warrant of Kennedy's vehicle. During the search of her vehicle, officers found a purple Crown Royal liquor bag; a small black fabric bag; and a handful of foreign coins that Wilcox identified as the coins he gave to Kennedy for her daughter.

Kotschwar testified that he interviewed Kennedy on February 25, 2019, during which Kennedy claimed she had no knowledge of the items found in her home, but did claim that her daughter also collected coins and that Wilcox had given some coins to her daughter as a gift. Kennedy told Kotschwar that she never kept anything in the safe at Wilcox's home and that she did not have the combination to access it.

Troy Walt, Kennedy's ex-boyfriend, testified that he recalled seeing coins in Kennedy's house prior to Kennedy meeting Wilcox. However, Walt was unable to specifically identify any of the coins that he saw. Kennedy's 15-year-old daughter testified that she collects coins with her little sister, and that they sometimes carry their coins in a Crown Royal bag. Kennedy also testified, denying stealing the safe. Kennedy testified that any of the items found either belonged to her and her daughters prior to her relationship to Wilcox, with the exception of the coins Wilcox gave to her daughters as a gift. Kennedy also testified that she was unsure how any of Wilcox's possessions ended up in her home. On cross-examination, Kennedy theorized that Wilcox took the safe out of his home himself, or placed the items in a box in her car, which Wilcox disputed on redirect.

On March 2, 2020, the district court entered a judgment, finding Kennedy guilty of theft, and further found that the value of the safe and its contents exceeded $5,000. Kennedy was sentenced for a period of not less than three (3) years nor more than six (6) years.

Kennedy now appeals.

## ASSIGNMENTS OF ERROR

Kennedy assigns that the district court erred when it found that she unlawfully took and exercised control over Wilcox's movable property with the intent to deprive Wilcox of that property. Kennedy also assigns that the district court erred in convicting and sentencing Kennedy on the basis of a Class IIA felony where the district court failed to specifically itemize the contents of Wilcox's safe and make findings as to the value of those contents.

## STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Williams*, 306 Neb. 261, 945 N.W.2d 124 (2020). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

## ANALYSIS

### SUFFICIENCY OF EVIDENCE

Kennedy makes two claims regarding the sufficiency of the evidence. Kennedy first argues that the evidence was insufficient to establish that she took or exercised control over property owned by Wilcox. Under Nebraska law, a person is guilty of theft if he or she takes, or exercises control over, movable property of another or any interest therein with the intent to deprive him or her thereof. Neb. Rev. Stat. § 28-511(1) (Reissue 2016).

Kennedy argues that the evidence adduced at trial was insufficient to establish the existence of the contents of Wilcox's safe, thus challenging that a theft occurred. Specifically, Kennedy contends that Wilcox's testimony alone was not enough to establish the existence of the contents, as there was no corroborative documentation. She also asserts that Wilcox was not a credible witness. Kennedy further argues that evidence was presented showing that any items that were found in her possession upon execution of the search warrants belonged to her or were given to her by Wilcox.

Contrary to Kennedy's argument, there was clearly sufficient evidence to support the court's finding that all elements of the crime of theft had been proven. Wilcox testified that he owned the safe and its contents and that the safe was used only by him. Kennedy admitted that she had no interest in or use of the safe. Wilcox testified to last seeing the safe on the morning of February 11, 2019, that he left the home for a short time while Kennedy was still there, and that after Kennedy left later that morning, the safe was gone. Wilcox gave a detailed itemization of the contents of the safe to law enforcement and provided at least some documentation regarding the items. Law enforcement officers recovered items from Kennedy's home in Kansas and in her vehicle that met the description of some of Wilcox's safe contents and that he identified as belonging to him. Although there is no direct evidence that Kennedy was the one who took the safe from Wilcox's home, that is not fatal to the case. Circumstantial evidence is not inherently less probative than direct evidence. *State v. Thelen*, 305 Neb. 334, 940 N.W.2d 259 (2020).

Circumstantial evidence is sufficient to support a conviction if such evidence and the reasonable inferences that may be drawn therefrom establish guilt beyond a reasonable doubt. *State v. Golyar*, 301 Neb. 488, 919 N.W.2d 133 (2018). Therefore, the district court did not err in finding that the evidence was sufficient to convict Kennedy of theft.

Kennedy also contends that Wilcox's testimony was not credible, pointing to inconsistencies between Wilcox's testimony and law enforcement reports. As noted above, an appellate court does not resolve conflicts in the evidence or pass on the credibility of witnesses. The district court apparently found the testimony of Wilcox to be credible, and we will not disturb the district court's finding on this basis.

CLASS IIA FELONY CONVICTION

Kennedy also assigns that the district court abused its discretion by convicting and sentencing her on the basis of a Class IIA felony when it failed to specifically itemize and value the property in question. Neb. Rev. Stat. § 28-518(1) provides that "[t]heft constitutes a Class IIA felony when the value of the thing involved is five thousand dollars or more." Accordingly, in any prosecution for theft under § 28-518, value shall be an essential element of the offense that must be proved beyond a reasonable doubt. § 28-518(8). When a fact finder determines the value of property in a theft case, an appellate court will not set aside that finding unless it is clearly erroneous. *State v. Dixon*, 306 Neb. 853, 947 N.W.2d 563 (2020).

The State presented evidence, through Wilcox's testimony, of the contents of the safe that he believed were stolen as well as the value of the items. The items included coins, precious metals, collectibles, and cash. The value of those items well exceeded the $5,000 amount to establish that the theft committed by Kennedy was a Class IIA felony. Kennedy's argument relies in part on her claim that Wilcox was not a credible witness, which we have already determined is not within the scope of our review. An item's market value at the time of the theft may be established by either direct or circumstantial evidence, and it presents a question of fact to be resolved by the fact finder. *Dixon, supra*. We conclude the district court's finding that the amount of the theft was over $5,000 was supported by sufficient evidence and therefore was not clearly erroneous.

Kennedy argues that the district court failed to itemize the items she allegedly stole and thus, there was insufficient evidence to support the classification of theft as a Class IIA felony. Section 28-518(7) provides that amounts taken pursuant to one scheme or course of conduct may be aggregated in the information in determining the classification of the offense. An act of theft involving multiple items of property stolen simultaneously at the same place constitutes one offense, in which the value of the individual stolen items may be considered collectively for the aggregate or total value of the property stolen to determine the grade of the offense. *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020). There is nothing in the statute or case law that requires a factfinder to separately itemize and value each item involved in a theft. This argument fails.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.