IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ROBERTSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SERCY ROBERTSON, APPELLANT.

Filed April 19, 2022.    No. A-21-474.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and Robert G. Hays for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

MOORE, RIEDMANN, and ARTERBURN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Sercy Robertson appeals his conviction for first degree sexual assault of a child. On appeal he challenges the district court's decision overruling his hearsay objections to certain evidence and the sufficiency of the evidence to sustain the conviction. We affirm.

## BACKGROUND

In August 2020, Robertson was charged with first degree sexual assault of a child. The matter proceeded to a jury trial, at which the evidence established that Robertson, born in 1976, is the father of J.J., born in 2006. Around the time J.J. was 11 years old, she, Robertson, and Robertson's wife moved from St. Louis, Missouri to Lincoln, Nebraska. J.J. testified at trial that since moving to Lincoln, Robertson had been touching her genitals on a regular basis. She described that he would put his hand underneath her pants. She was asked whether Robertson "ever

- 1 -

put his finger between the, I guess, folds or slits of your genital area," and she responded, "Yes." Once his finger was "in there" he would "try to rub it."

The most recent occasion that Robertson touched J.J. occurred in June 2020. J.J. testified that Robertson went into her bedroom and began touching her, and when she fought him off, he punched her in the stomach. That time, she told a friend what happened, and her friend and her friend's mother came and picked J.J. up from her house.

Her friend's mother called the police and ultimately took J.J. to a child advocacy center for a forensic interview and examination. The sexual assault nurse examiner (SANE) testified that she performed an examination on J.J. and that during the examination, J.J. told her that Robertson had touched her inside of her genital area. J.J. denied that Robertson penetrated her vagina but reported that he had penetrated her genital area with his fingers. J.J. also complained to her of soreness in her lower abdominal area and reported that when she had tried to push Robertson's hand away, he had punched her in the stomach.

Dr. Stacie Bleicher, the medical director of the child advocacy center, also examined J.J. She explained at trial that the exams she performs at the advocacy center on child victims end up being a "little less 'forensic'" than the SANE exams in the sense that the purpose is not necessarily to find evidence against an accused perpetrator, but rather, her exams are an opportunity to ascertain for the children whether their bodies are healthy and normal, in spite of what might have happened to them. She testified that she rarely finds evidence that is proof of sexual contact and that more often than not, the exams are normal, which she finds is an important stage for the children to know that their bodies are okay and is part of the healing process in her opinion. Her exams entail a general head-to-toe physical of the child. Doing a complete exam also gives her the opportunity to see if there are any other signs of physical abuse or neglect present and to rule out infection or physical injury.

Bleicher did a full medical, or head-to-toe, exam on J.J. During the exam, she asked J.J. what had happened to her. The purpose of that question was to assist in understanding whether the touching J.J. experienced was external or internal, assess for any injuries that might be present or potential signs of infection, and guide her during the exam.

At one point, the State asked Bleicher what J.J. told her had happened, and Robertson objected on hearsay grounds. The district court overruled the objection. Bleicher testified that she specifically asked J.J. to show her where the touching occurred so she could understand if there was potential for internal damage. She explained that J.J. was not wearing pants or underwear at the time, so with gloved hands, Bleicher separated the skin folds on J.J.'s genital area so that she could see the internal structures, and while she had the skin folds separated, J.J. showed her where Robertson had touched her.

The State then showed Bleicher a document marked as exhibit 13, which she described as a diagram of the female genitalia with the labia separated so the internal structures can be seen. The diagram depicted the areas J.J. identified during her exam where she had been touched. Bleicher was asked to mark those areas on the diagram, and she did so by placing an "x" on each of the two locations J.J. identified. The State offered the exhibit into evidence, and Robertson objected on hearsay grounds. The court overruled the objection and received the exhibit into evidence. Bleicher was then asked whether she would consider the locations that she marked on

the diagram to be internal to the female genitalia, and she said yes. The State asked whether the labia had to be moved to access those two areas, and Bleicher responded, "Or penetrated, yes."

During the course of the police investigation, Robertson was interviewed by a Lincoln police investigator. The interview was recorded, and the recording was received into evidence and played for the jury at trial. Robertson initially denied the allegations, but eventually he admitted to an occasion, which he claimed occurred in 2017, where J.J. sat on his lap, and he put his hand in her pants and touched her between the folds of her genital area. The investigator was specifically asked at trial whether, during the course of the interview, Robertson admitted to using his finger to penetrate J.J.'s genitals and rub her clitoris, and the investigator responded, "Yes, he did."

While investigating this case, the investigator also arranged a controlled phone call between J.J. and Robertson. He explained that a controlled call is essentially a recorded phone call between a victim, witness, and/or perpetrator that is directed by law enforcement. The purpose of a controlled call is to elicit corroboration of a victim's disclosure. A copy of the recorded call was received into evidence and played for the jury. During the conversation, J.J. asked Robertson how many times he touched her vagina, and he responded that he did not know. At one point, the following exchange occurred:

> J.J.: I just don't want you [to] put your penis inside of me.
> Robertson: I wasn't even thinking about that [J.J.]
> . . .
> J.J.: Fingers are still bad.
> Robertson: You think I don't know that? . . .
> J.J.: Then why did you do it?
> Robertson: I--I told you I didn't know . . .

After the State rested its case, Robertson made an oral motion to dismiss the charge on the basis that the State failed to present a prima facie case. The district court denied the motion. Robertson then rested without presenting any evidence and moved for a directed verdict, arguing that the evidence was insufficient to allow a reasonable juror to find him guilty beyond a reasonable doubt. That motion was also denied.

The jury found Robertson guilty. He was sentenced to 20 to 25 years' imprisonment. Robertson timely appeals.

## ASSIGNMENTS OF ERROR

Robertson assigns that the district court erred in (1) overruling his hearsay objection to exhibit 13, (2) overruling his hearsay objection to Bleicher's testimony regarding the out-of-court statements of J.J., (3) overruling his motion to dismiss at the close of the State's evidence, (4) overruling his motion for directed verdict at the close of all evidence, and (5) finding sufficient evidence to sustain the conviction.

## STANDARD OF REVIEW

Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the

court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds. *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017).

Whether a statement was both taken and given in contemplation of medical diagnosis or treatment is a factual finding made by the trial court in determining the admissibility of the evidence under rule 803(3). *Id*.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019).

ANALYSIS

*Admissibility of Exhibit 13 and Bleicher's Testimony.*

Robertson addresses his first two assignments of error together, arguing that the district court erred in overruling his hearsay objections to exhibit 13 and Bleicher's testimony regarding the statements J.J. made to her. He claims that this evidence was hearsay not within the medical diagnosis or treatment exception. See Neb. Evid. R. 803(3), Neb. Rev. Stat. § 27-803(3) (Reissue 2016). We disagree.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. Neb. Evid. R. 801(3), Neb. Rev. Stat. § 27-801(3) (Cum. Supp. 2020). See, also, *State v. Jedlicka, supra*. A declarant's out-of-court statement offered for the truth of the matter asserted is inadmissible unless it falls within a definitional exclusion or statutory exception. See, Neb. Evid. R. 802, Neb. Rev. Stat. § 27-802 (Reissue 2016); *State v. Jedlicka, supra*.

Rule 803(3) provides that the hearsay rule does not exclude statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment. Rule 803(3) is based on the notion that a person seeking medical attention will give a truthful account of the history and current status of his or her condition in order to ensure proper treatment. *State v. Jedlicka, supra*.

In the present case, Robertson argues that the medical diagnosis or treatment exception does not apply because Bleicher's exam was forensic in nature and the statements she obtained from J.J. were for the purpose of gathering evidence and distinguishing between grades of criminal offenses.

A statement is generally considered admissible under the medical purpose hearsay exception if gathered for dual medical and investigatory purposes. *State v. Vigil*, 283 Neb. 129, 810 N.W.2d 687 (2012). Even the declarant's knowledge that law enforcement is observing or listening to the statements does not necessarily preclude admissibility of a statement as being for a medical purpose. *Id*. Further, the predominant purpose of the statement is not the real question in determining admissibility. *Id*. The fundamental inquiry is whether the statement, despite its dual purpose was made in legitimate and reasonable contemplation of medical diagnosis or treatment,

because if the challenged statement has some value in diagnosis or treatment, the patient would still have the requisite motive for providing the type of sincere and reliable information that is important to that diagnosis or treatment. *Id.*

Statements having a dual medical and investigatory purpose are admissible under rule 803(3) only if the proponent of the statements demonstrates that (1) the declarant's purpose in making the statements was to assist in the provision of medical diagnosis or treatment and (2) the statements were of a nature reasonably pertinent to medical diagnosis or treatment by a medical professional. *Id.* Under rule 803(3), there need not be direct evidence of the declarant's state of mind; instead, the appropriate state of mind of the declarant may be reasonably inferred from the surrounding circumstances. *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017).

Here, Bleicher explained that the examinations she does entail a general head-to-toe physical. The purpose of her exams is to try to rule out infection or physical injuries, and they give her the opportunity to assess whether there are any other signs of physical abuse or neglect present. The exams also afford Bleicher an opportunity to assure the children that their bodies are healthy and normal, in spite of what might have happened to them, which she opined was important for the children and part of the healing process.

Bleicher testified that she asked J.J. what happened to her and that the purpose of that question was to assist in understanding whether the touching was external or internal in order to guide her exam and assess for potential injuries or signs of infection. Bleicher explained that she specifically asked J.J. to show her where the touching occurred so she could understand if there was potential for internal damage. Over Robertson's hearsay objection, Bleicher testified that during her examination, she separated the skin folds on the outside of J.J.'s body so that she could see internal structures, and J.J. showed her where she had been touched. Bleicher also marked on exhibit 13 the areas where J.J. said she had been touched.

Based on the foregoing testimony, we conclude that the purpose of J.J. showing Bleicher exactly where Robertson had touched her was to guide the examination and assist Bleicher in evaluating for injury or infection and was of a nature reasonably pertinent to medical diagnosis or treatment by a medical professional. The district court therefore did not err in allowing Bleicher to testify about J.J.'s statements regarding the assaults or admitting exhibit 13 into evidence.

*Sufficiency of Evidence.*

Robertson also addresses his final three assigned errors together, arguing that the evidence was insufficient to sustain the conviction, and that, therefore, the district court should have granted either his motion to dismiss or his motion for directed verdict. A motion to dismiss at the close of all the evidence has the same legal effect as a motion for a directed verdict. *State v. Dixon*, 306 Neb. 853, 947 N.W.2d 563 (2020). And a motion for directed verdict is simply another name for a motion for judgment of acquittal. *Id.* All three motions assert that the defendant should be acquitted of the charge because there is no legally sufficient evidentiary basis on which a reasonable jury could return a guilty verdict. *Id.* Thus, however styled, this type of motion made at the close of all the evidence challenges the sufficiency of the State's evidence to sustain the conviction. *Id.*

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in

the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. An appellate court does not resolve conflicts in the evidence, pass on credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *Id*.

A person commits first degree sexual assault of a child when he or she subjects another person under 12 years of age to sexual penetration and the actor is at least 19 years of age or older or when he or she subjects another person who is at least 12 years of age but less than 16 years of age to sexual penetration and the actor is 25 years of age or older. Neb. Rev. Stat. § 28-319.01 (Reissue 2016). Robertson does not challenge the sufficiency of the evidence as to his age or J.J.'s age but focuses solely on the element of penetration. He argues that without considering Bleicher's testimony of J.J.'s statements to her and exhibit 13, evidence he asserts was erroneously admitted, there was no evidence of penetration. We have already found no error in the admission of Bleicher's testimony or exhibit 13, but even if this evidence was excluded, the remaining evidence was sufficient for the jury to find that Robertson subjected J.J. to sexual penetration.

Sexual penetration is defined as any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body. Neb. Rev. Stat. § 28-318(6) (Cum. Supp. 2020). The slightest intrusion into the genital opening is sufficient to constitute penetration, and such element may be proved by either direct or circumstantial evidence. *State v. Smith*, 302 Neb. 154, 922 N.W.2d 444 (2019). It is not necessary that the vagina be entered or that the hymen be ruptured; the entry of the vulva or labia is sufficient. *Id*. In *State v. Smith, supra*, the Nebraska Supreme Court found the evidence sufficient to prove sexual penetration based on testimony that the defendant touched the victim "'between the skin folds known as the labia'" and "'between the lips of her vagina.'" *Id*. at 183, 922 N.W.2d at 465.

Similar evidence was presented in this case. J.J. was asked whether Robertson put his finger "between the . . . folds or slits of [her] genital area," and she responded, "Yes." The SANE nurse testified that J.J. told her that Robertson had touched her inside of her genital area and that he had penetrated her genital area with his fingers. During Robertson's interview with police, he admitted to a time when J.J. sat on his lap, and he touched her vagina between the folds. The investigator also testified that Robertson admitted that he had used his finger to penetrate J.J.'s genitals and touch her clitoris. Viewing this evidence in the light most favorable to the State, we conclude that the evidence was sufficient to sustain the conviction.

## CONCLUSION

The district court did not err in overruling Robertson's hearsay objections to Bleicher's testimony or to exhibit 13. In addition, we find that the State presented sufficient evidence to sustain the conviction. We therefore affirm Robertson's conviction and sentence.

AFFIRMED.