STATE OF NEBRASKA, APPELLEE, V. ROBERT LOFQUEST, APPELLANT.

418 N.W.2d 595

Filed February 5, 1988.    No. 87-439.

Robert Lofquest, pro se.

Robert M. Spire, Attorney General, and Lynne R. Fritz, for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and HANNON, D.J.

WHITE, J.

This is an appeal from the district court for Dodge County. The district court order denied appellant's request for postconviction relief after an evidentiary hearing. That hearing was held pursuant to an order of this court in *State v. Lofquest*, 223 Neb. 87, 388 N.W.2d 115 (1986), wherein the district court's denial of postconviction relief was reversed and remanded for further proceedings.

The facts of this case are adequately set forth in *State v. Lofquest, supra*. The issue to be addressed in this case is whether appellant's due process rights under the 14th amendment were violated by the prosecutor's remarks at trial regarding appellant's postarrest silence. This court had ordered the evidentiary hearing to ascertain when appellant's *Miranda* rights were given and to establish the nature of the prosecutor's remarks.

After reviewing the record, it is obvious that the police officers involved and the appellant are not in agreement on whether the *Miranda* warnings were ever given to appellant by any officer. The record does show, quite clearly, that appellant was informed of his constitutional rights, including the right to remain silent, on August 18, 1983, by Dodge County Court Judge Haslam at arraignment. This came 1 day after appellant's first police contact relating to this charge and 2 days after the assault with which he was charged took place.

As this court pointed out in *State v. Lofquest, supra*, the case at bar is governed by the principles of *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), and *Fletcher v. Weir*, 455 U.S. 603, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982). *Doyle* stands for the proposition that the due process clause of the 14th amendment forbids prosecutors from using a defendant's postarrest, post-*Miranda* silence for impeachment purposes.

The Supreme Court limited the *Doyle* rule in *Fletcher*, when it held that a prosecutor's remarks referring to postarrest, pre-*Miranda* silence do not necessarily violate a defendant's due process rights. The Court stated that "[i]n the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand." *Fletcher v. Weir, supra* at 607.

The dispositive factor in this case becomes the nature of the prosecutor's remarks at appellant's trial. Specifically, which period of silence did the prosecutor refer to at trial? After Lofquest had given his story on direct examination, the prosecutor on cross-examination began to ask a series of questions, over defense counsel's objection, regarding Lofquest's lack of statements to the police officer regarding this story. After the defense objection, the prosecutor addressed the court, with the jury present, and stated, "I think it affects his credibility if he gave no statements to the officers prior to this time." The objection was overruled, and the prosecutor continued. Toward the end of this litany the prosecutor asked appellant, "As a matter of fact, the first time you've told this story to anyone in law enforcement is today?" He continued and asked, "Do you understand, Mr. Lofquest, that had you told any of these officers where you were that they would have gone to that scene and looked for tire tracks, looked for cigarette butts, compared them with your vehicle. They would have done what they could to prove your statement?" Lofquest responded by saying, "Probably. I don't know that for sure what they do. I do not know police procedures exactly."

During closing arguments, the prosecutor stated that Lofquest said,

> "It wasn't me." But, who does he tell that story to? Did he tell it to the police? No. He admitted to you this morning that he knew that if he told the police where he was, the police would go out and they would look for tire tracks and they'd look for cigarette butts; they'd be trying to verify his story. He said he knew that. And he didn't tell them anything.

He later continued by saying, "Now, I want to think that if you were picked up by the police for a crime that you didn't do and you had an explanation that you were — you didn't do it and you had gone some place else; wouldn't you tell them? I would."

This line of questioning and the remarks as to what the police *might* have done had Lofquest told his story as he "*should*" have prior to trial invited jurors to speculate about an investigation that might as easily not have taken place. More importantly, these generalized questions and comments make it nearly impossible to discern, for purposes of a *Doyle* inquiry, what period of silence the prosecution was referring to, pre-*Miranda* or post-*Miranda*. It seems to us that the prosecutor's remarks could be construed as referring to appellant's silence from the first police contact through the moment before Lofquest told his story at trial. Given this construction, the prosecutor clearly violated the rule set forth in *Doyle*, because we know that Lofquest was given "the sort of affirmative assurances embodied in the *Miranda* warnings," *Fletcher*, 455 U.S. at 607, when he appeared before the county court judge on August 18, the day he was arrested on the felony assault charge.

In a case such as this where a pre-*Miranda* and post-*Miranda* timeframe may exist, difficulties arise when general references are made to a defendant's silence, which a reasonable juror could construe as including the post-*Miranda* silence period. We cannot allow prosecutors to sidestep the *Doyle* protections by skirting the edge of the law with vague and imprecise references to a .defendant's silence. For these reasons we conclude that appellant's constitutional right to due process of law was violated.

The conclusion that there was a violation of the principles of *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), in this case does not end the inquiry. The State, in this case, asserts that even if a constitutional error took place, the error was harmless beyond a reasonable doubt. As noted in a recent U.S. Court of Appeals for the Seventh Circuit case, *United States ex rel. Miller v. Greer*, 789 F.2d 438, 442 (7th Cir. 1986), "The circuits universally apply this 'harmless beyond a

reasonable doubt' standard to *Doyle* violations." We see no reason to depart from that rule.

After a careful review of the record in this case, we are unable to conclude that the constitutional error was harmless beyond a reasonable doubt.

It has been held that in cases that come "down to a one-on-one situation, *i.e.*, the word of a defendant against the word of the key prosecution witness . . . the importance of the defendant's credibility becomes so significant that prosecutorial error attacking that credibility cannot be harmless beyond a reasonable doubt." *Velarde v. Shulsen*, 757 F.2d 1093, 1095 (10th Cir. 1985), citing *United States v. Polsinelli*, 649 F.2d 793 (10th Cir. 1981).

The testimony in this case indicates that there were no eyewitnesses to the attack on the victim. This was certainly a case where the defendant's credibility as a witness played a major role in the jury's evaluation of the veracity of his story. The prosecutor's comments during trial and in closing could not be said to constitute an inconsequential passing remark regarding appellant's silence. The jury was allowed to consider these comments fully, after a defense objection which was overruled, and obviously no curative instruction was given. (See *Greer v. Miller*, ＿＿ U.S. ＿＿, 107 S. Ct. 3102, 97 L. Ed. 2d 618 (1987), where a single question, an immediate objection, and two curative instructions did not constitute a *Doyle* violation, and such attempted *Doyle* violation was harmless beyond a reasonable doubt.)

Federal circuit court cases have noted, "Because the nature of a *Doyle* error is so egregious and so inherently prejudicial, reversal is the norm rather than the exception." *Williams v. Zahradnick*, 632 F.2d 353, 363 (4th Cir. 1980), cited in *Alston v. Garrison*, 720 F.2d 812 (4th Cir. 1983). For the above-stated reasons, we hold that the *Doyle* violations in this case were so egregious and prejudicial that they were not harmless beyond a reasonable doubt, and a reversal is required.

REVERSED AND REMANDED FOR A NEW TRIAL.