IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. ALLEN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

MASSEY L. ALLEN, JR., APPELLANT.


Filed June 28, 2022.    No. A-21-553.


Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Jason E. Troia, of Dornan, Troia, Howard, Breitkreutz, Conway & Dahlquist, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.


PIRTLE, Chief Judge, and BISHOP and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Following a jury trial in the Douglas County District Court, Massey L. Allen, Jr., was convicted of involuntary manslaughter for the death of Horace Steen. He was further found to be a habitual criminal and sentenced to 20 to 25 years' imprisonment. Allen appeals his conviction and sentence, claiming errors related to evidentiary objections raised at trial, his motion for mistrial, the sufficiency of the evidence, and the excessiveness of his sentence. Allen also claims that his trial counsel was ineffective for numerous reasons. We affirm.

## II. BACKGROUND

In the evening of March 25, 2020, Steen was outside of a local grocery store in Omaha, Nebraska. He was with a group of three to four people; according to witnesses, Steen appeared to

- 1 -

have drunk a few beers throughout the day. At approximately 8 p.m., Allen and a friend, Enice Prince, drove up to the store. Allen noticed two other friends, Robert Drake and Charles Smith, standing outside the grocery store, and he agreed to give them both a ride home.

While parked, Allen saw Steen outside the store, and Steen approached Allen's vehicle. Allen and Steen had known one another for approximately 20 years, and Allen considered Steen a "friend," given their history. According to Allen, Steen came up to his vehicle and said "hello," and this conversation was otherwise not "particularly noteworthy or disturbing" to Allen. Steen had a beer bottle in his hand as he spoke with Allen. After Drake and Smith entered his vehicle, Allen began to drive them to their respective homes. As he pulled away from the store, Allen heard Steen say to him, "[G]et the 'F' out of here you fucking pedophile, before you go to jail." According to Drake, he heard Steen call Allen a "pedophile" among other "smart comments" to Allen. Drake indicated that Steen was loudly hollering and appeared intoxicated, and that Steen was being "rowdy," "disruptive," and "talking tough." At some point Steen took off his jacket and tossed it to the ground, and although Drake conceded that Steen did not physically attempt to stop Allen's vehicle, Steen was nevertheless "on the sidewalk running his mouth." Duane Montgomery, who was an observer across the street, heard Steen call Allen a "pervert."

Steen's comments caused Allen to become "disturbed." Allen recalled telling Steen to "watch [his] mouth" and that Steen responded, "[C]ome back and I'll whoop your ass." After starting to drive away, Allen stopped the vehicle and began backing up. As Allen parked his vehicle, Steen put down the beer bottle he was holding and took off his coat.

A surveillance camera recorded the following encounter between Allen and Steen; there is no audio. After Allen left his vehicle, he moved toward the rear end of the car as Steen approached him. The two began to speak, and Steen took a step toward Allen and bent forward. The recording shows that Steen made a motion with his arms and body that caused Allen to jump backwards slightly and bring his hands up. Steen then returned to a neutral standing position and appeared to turn his body away from Allen while continuing to face him. Steen next appeared to take a step to the side, away from Allen, before turning to fully face Allen again. Allen then punched Steen in the face, and Steen fell backwards to the ground and hit his head. Allen immediately returned to his vehicle and drove off. Emergency responders were dispatched to the grocery store. Steen lay unconscious in the parking lot where he fell, and blood had pooled around him from a wound to his head. As paramedics rendered aid, Steen remained unresponsive and required assistance with breathing. He was taken to a hospital for emergency care. Allen was taken into custody the following day.

On April 14, 2020, law enforcement investigators were notified that Steen had passed away. An autopsy was conducted. According to the forensic pathologist who examined Steen's body and medical records, the cause of death was "blunt force head injuries and complications of those head injuries," and the pathologist affirmed that Steen's injuries were consistent with "being hit, falling to the ground, and hitting his head on the concrete." The pathologist also testified that Steen's blood was tested for alcohol upon his hospital admission on March 25, and the test result was "above .1."

On May 19, 2020, the State filed an information charging Allen with one count of manslaughter, a Class IIA felony, in violation of Neb. Rev. Stat. § 28-305 (Reissue 2016). The State filed an amended information on October 19, charging Allen with one count of manslaughter,

consistent with the initial information, and one count of being a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 2016). The State subsequently filed a second amended information modifying the charge of manslaughter to reflect the legal theory that Allen unintentionally killed Steen while in the commission of an unlawful assault. The allegations contained in the second amended information were otherwise consistent with the first amended information.

A jury trial was held March 24 through March 26, 2021. Evidence related to the events occurring on March 25, 2020, was presented through witness testimony, including Allen's, as well as video recordings of the encounter. In addition to the previously described evidence, we now set forth further evidence pertinent to the issues on appeal.

One video taken from a cell phone began just before Allen punched Steen and did not record Steen's prior statements and conduct. The video indicates that the individuals outside of the storefront were cheering on the fight. In addition to this video, as well as surveillance videos, the State elicited testimony from the police officer who first arrived at the grocery store following the incident, the fire department captain who described Steen's medical treatment at the scene, the criminal investigation detective, the forensic pathologist, and Drake. Drake acknowledged that he had only been contacted by the prosecutor's office "this week," and that he had wanted to be a "defense witness, not a [S]tate witness." After the State rested its case in chief, Allen's counsel moved for a judgment of acquittal. The district court overruled the motion. The defense proceeded with its evidence.

Allen testified that when he returned to the storefront after Steen's insults, he intended only to "verbally confront" Steen. He recalled seeing Steen "walking towards [his] car" like he was "going to fight." As Steen approached, he said, "[C]ome on, you ready," to Allen, and Allen felt "threatened" by Steen and the people standing nearby "telling [Steen] to knock [Allen] out." Allen testified that Steen then "bent down and . . . lurched like he was going to hit" him, which caused Allen to jump back slightly. Steen stood back up after he "flinched" at Allen, and Allen then "walked toward" Steen and "punched him in the face." Allen then "immediately jumped in the car and drove off" because he "thought someone was going to come up and jump [him] from behind."

In addition to Allen and Drake, two other witnesses testified regarding the encounter. According to Montgomery's testimony, Steen "took his jacket off" and "act[ed] like . . . he was going to do something" to Allen after he called Allen a "pervert." Steen then "ran up" to Allen and "acted like he was going to hit" him. Montgomery affirmed that Steen "cocked back [his arms] a little bit" and "lung[ed] forward," and Allen punched Steen "after that moment."

William Wright, who was "directly across the street" from the grocery store, recalled that Steen was "hollering" at Allen, and this continued as Allen stepped out of his vehicle. Steen then "started walking towards" Allen, and "right when they got close enough, [Steen] . . . act[ed] like he was going to hit" Allen. Allen then "jump[ed] and "at the same time . . . came back with a punch."

Following Wright's testimony, the defense rested. No renewed motion for a judgment of acquittal was made. The district court read aloud the jury instructions, which included an instruction on self-defense. Counsel for the State and for the defense made closing arguments. After deliberation, the jury found Allen guilty of manslaughter. Once the jury was thanked for its service and excused, the court received the jury's verdict and entered judgment, finding Allen guilty of manslaughter.

A hearing was held on May 10, 2021, concerning Allen's status as a habitual criminal. The State introduced evidence of Allen's prior felony convictions. Allen's counsel objected "to the State enhancing the manslaughter conviction" through the habitual criminal allegation, arguing that such enhancement was an "improper double enhancement" given that third degree assault, a misdemeanor, was the predicate offense for Allen's felony charge of involuntary manslaughter. The district court found Allen to be a habitual criminal. Allen thereafter retained new counsel, and at a sentencing hearing held on June 25, the court sentenced Allen to 20 to 25 years' imprisonment with 91 days credited for time served. The court also ordered Allen to pay $1,500 in restitution to Steen's family.

Allen appeals.

## III. ASSIGNMENTS OF ERROR

Allen claims, reordered and restated, that (1) the district court erred in sustaining the State's hearsay objections to certain questions; (2) the court erred in failing to grant his motion for mistrial; (3) the evidence "[a]t best" only proved a fight by mutual consent, which could not serve as a predicate offense to manslaughter; (4) the evidence was insufficient to sustain his conviction; and (5) his sentence was excessive. Allen also raises multiple claims of ineffective assistance of trial counsel.

## IV. STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules and judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Figures, supra*. Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds. *State v. Childs*, 309 Neb. 427, 960 N.W.2d 585 (2021).

An appellate court will not disturb a trial court's decision whether to grant a motion for mistrial unless the court has abused its discretion. *State v. Figures, supra*.

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, and such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct

appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

## V. ANALYSIS

### 1. HEARSAY OBJECTIONS

Allen claims that the district court erred in sustaining the State's hearsay objections during Drake's cross-examination. Drawing attention to Drake's earlier testimony that Steen called Allen a "pedophile" and made "some smart comments" to Allen, Allen's trial counsel asked Drake on cross-examination, "What else did [Steen] say?" The State objected, claiming that the question called for hearsay. Allen's counsel responded that it "would go to the rule of completeness now that the State has already elicited it," "would be an excited utterance," and "would [also] reflect [the] state of mind of the declarant." The court sustained the State's objection, stating that it did not think that Drake's testimony concerning Steen calling Allen a "pedophile" and making other "smart comments" was "elicited" by the State, but rather "offered" by Drake. The court concluded that such testimony did not "open[] the door" under the rule of completeness. Allen's counsel did not make an offer of proof for Drake's testimony regarding Steen's statements to Allen.

Shortly thereafter, the following exchange took place between Allen's counsel and Drake:

[Counsel:] At some point, Mr. Drake, when you're in the Cadillac and your [sic] first backing off to leave. Okay. Is that when Mr. Steen starts hollering in the direction of your car?

[Drake:] Yes.

[Counsel:] Is he loud?

[Drake:] I'm sorry, what's that?

[Counsel:] Is he loud?

[Drake:] Oh, yes.

[Counsel:] And is this part of your observations of when you believe he appeared to be intoxicated in your observation?

[Drake:] Yes.

[Counsel:] What was he shouting at that time?

The State then objected on the basis of hearsay. Allen's counsel responded that "the foundation has been laid for an excited utterance," and the statement "is not hearsay if it involves the crime itself, which all of the events right here in this one to two minute time period is." The district court sustained the State's objection "for hearsay" without further elaboration. Allen's counsel also did not make an offer of proof for Drake's testimony regarding these statements.

In our review of the record, we conclude that we are unable to address the merits of Allen's claimed error. An appellate court cannot consider an error assigned on the ground that the trial court excluded evidence unless the record reveals an offer of proof or the offer was apparent from the context within which questions were asked. *State v. Heng*, 25 Neb. App. 317, 905 N.W.2d 279 (2017). See, also, *State v. Schreiner*, 276 Neb. 393, 745 N.W.2d 742 (2008). Allen appears to assert on appeal that Drake would have testified that Steen told Allen that he was "going to whoop

[his] ass," brief for appellant at 20. However, as noted by the State in its brief, Allen's trial counsel did not make offers of proof of Drake's proposed testimony concerning Steen's statements to Allen. Further, the questions posed by Allen's counsel were open-ended and nonspecific, and it is not apparent from the context of Drake's cross-examination what his testimony would have been. Accordingly, we find that error may not be predicated upon the district court's exclusion of Drake's testimony on this matter without an offer of proof setting forth the testimony in question. We will, however, address this issue later in the opinion in the context of one of Allen's claims of ineffective assistance of trial counsel.

### 2. MOTION FOR MISTRIAL

Allen asserts that the district court erred in denying his motion for mistrial following the State's inquiry into whether Allen spoke to law enforcement after the incident. During the State's cross-examination of Allen, the following colloquy occurred:

[The State:] You didn't provide medical aid to Horace Steen, correct?

[Allen:] It happened so fast, I got in my car and drove off.

[The State:] Yes or no, did you stop and provide medical aid to Horace Steen?

[Allen:] No, I couldn't because I drove off.

[The State:] Again, yes or no.

[Allen:] No.

[The State:] Instead you drove off, correct?

[Allen:] I drove off due to the fact there were people around me and I thought I was going to be jumped.

[The State:] Okay.

[Allen:] And I didn't think that he was hurt that bad.

[The State:] Those same individuals you're scared of that were just cheering for you in [the cell phone video], correct?

[Allen:] They were not cheering for me, they were cheering for Horace because they were with Horace. My party was in the car.

[The State:] You never called 911 when you left the scene?

[Allen:] No, I thought they were going to do it. I didn't think he was that hurt. I didn't know what was going on.

[The State:] You never spoke to law enforcement -- (interrupted)

[Allen:] I got arrested the next day, less than 24 hours.

[The State:] Again, you --

Allen's trial counsel then objected to the State's questioning and moved for a mistrial, claiming that the State "just tried to impeach" Allen with his silence following his arrest and invocation of his constitutional right to remain silent. The State claimed in response that it was "specifically asking about that night" following the incident between Allen and Steen. Allen's counsel thereafter argued, citing *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), and *State v. Lofquest*, 227 Neb. 567, 418 N.W.2d 595 (1988), that where the prosecution's reference to a defendant's silence "is not specific" but rather "general, it is a mistrial."

Following a brief recess, the district court overruled Allen's motion for mistrial. The court noted the "context of the [State's] question" and Allen's interruption, finding that nothing "suggest[ed] to the Court that the State was trying to elicit post-*Miranda* silence or impeach [Allen] with post-*Miranda* silence." The State thereafter withdrew the question and concluded its cross-examination.

A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition to the jury and thus prevents a fair trial. *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018). Pursuant to *Doyle v. Ohio, supra*, a defendant's silence at the time of arrest and after being advised of his right to remain silent may not be used for impeachment purposes. However, a "prosecutor's remarks referring to post-arrest, pre-*Miranda* silence do not necessarily violate a defendant's due process rights" under the 14th Amendment of the U.S. Constitution. *State v. Lofquest*, 227 Neb. at 569, 418 N.W.2d at 596 (citing *Fletcher v. Weir*, 455 U.S. 603, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982)). The Nebraska Supreme Court has stated that in cases "where a pre-*Miranda* and post-*Miranda* timeframe may exist, difficulties arise when general references are made to a defendant's silence, which a reasonable juror could construe as including the post-*Miranda* silence period." *State v. Lofquest*, 227 Neb. at 570, 418 N.W.2d at 597. In such circumstances, "vague and imprecise references to a defendant's silence" may not be used by the prosecution to circumvent the protections afforded by *Doyle v. Ohio, supra*. See *State v. Lofquest*, 227 at 570, 418 N.W.2d at 597.

However, the concern about vague and imprecise references to a defendant's silence discussed in *Lofquest* is distinguishable from those situations where the State refers to a defendant's silence at a time before the defendant's arrest and before *Miranda* warnings are given. See *State v. Custer*, 292 Neb. 88, 111, 871 N.W.2d 243, 261 (2015) (State's comments in closing arguments were not improper since the State's reference to defendant's actions immediately after shooting when defendant did not call police "clearly refer to [defendant's] silence at a time before he was arrested and given *Miranda* warnings").

Allen argues that "[i]t was left ambiguous as to whether [the State's] questioning was referring to pre- or post-*Miranda* silence" and the district court therefore erred in failing to grant Allen's motion for mistrial. Brief for appellant at 22. We are not persuaded that the State's question on cross-examination was ambiguous such that a mistrial should have been ordered pursuant to *State v. Lofquest, supra*. As set forth above, the State's question regarding Allen "never [speaking] to law enforcement" was interrupted by Allen's response, and in a vacuum, it is not clear whether the State's inquiry was referring to Allen's "pre-*Miranda*" or "post-*Miranda*" silence. However, we observe that the State's questioning immediately prior to this inquiry focused only on Allen's actions just after the incident. These questions included inquiries such as "[D]id you stop and provide medical aid to Horace Steen?"; "Instead you drove off, correct?"; and "You never called 911 when you left the scene?" In light of this context leading up to the State's inquiry to confirm that Allen "never spoke to law enforcement," we find that the record supports the district court's conclusion that the State was not referring to Allen's "post-*Miranda*" silence. Accordingly, we find the trial court did not abuse its discretion in denying Allen's motion for mistrial.

### 3. Fight by Mutual Consent as Predicate
### Offense for Manslaughter

Allen claims on appeal that "the evidence established that Allen and Steen engaged in a fight by mutual consent," and "a fight by mutual consent cannot [be a predicate offense for felony manslaughter] because it involved consent." Brief for appellant at 17-18. However, the claim that an assault in the third degree committed in a "fight or scuffle entered into by mutual consent" pursuant to Neb. Rev. Stat. § 28-310(2) (Reissue 2016) could not be a predicate offense to manslaughter was not raised before or at trial. Accordingly, we decline to address this assigned error. See *State v. Thomas*, 303 Neb. 964, 932 N.W.2d 713 (2019) (appellate court will not consider issue on appeal that was not presented to or passed upon by trial court). We will, however, address this issue later in the opinion in the context of one of Allen's claims of ineffective assistance of trial counsel.

### 4. Sufficiency of Evidence

Allen argues that the evidence was insufficient to sustain his conviction for manslaughter. He claims the evidence received at trial indicated that he "acted in self-defense and was not the initial aggressor," directing this court's attention to the witness testimonies previously described concerning the incident. Brief for appellant at 16. He asserts that all evidence "pointed to Steen provoking Allen by name calling and using fighting words," and the only evidence indicating that Allen could have been the initial aggressor "was that he completed his punch before Steen did." *Id.* at 16.

Per our standard of review, the relevant question for this court is, when viewing the evidence in the light most favorable to the prosecution, whether a rational fact finder could find the essential elements of the crime beyond a reasonable doubt. See *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). As relevant to this case, § 28-305(1) provides that a person "commits manslaughter if he or she . . . causes the death of another unintentionally while in the commission of an unlawful act." The State alleged the unlawful act in this case was assault in the third degree pursuant to § 28-310, which provides:

> (1) A person commits the offense of assault in the third degree if he [or she]:
> (a) Intentionally, knowingly, or recklessly causes bodily injury to another person; or
> (b) Threatens another in a menacing manner.
> (2) Assault in the third degree shall be a Class I misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it shall be a Class II misdemeanor.

However, pursuant to Neb. Rev. Stat. § 28-1409(1) (Reissue 2016), force that would otherwise qualify as assault is "justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by [another] person on the present occasion."

Upon our review of the record, we find that the evidence was sufficient to sustain Allen's conviction for manslaughter. There is no dispute that Allen punched Steen. The sole question before this court is whether a rational fact finder could have determined that Allen's use of force

was not justified when viewing the evidence in the light most favorable to the prosecution. We initially observe that Allen voluntarily returned to the storefront and stepped out of his vehicle in order to "verbally confront" Steen despite his freedom to avoid further conflict. As set forth previously, the surveillance recording demonstrates that Steen moved in proximity to Allen, bent forward, and made motions with his arms. However, immediately thereafter, Steen returned to a neutral standing position, and took a step to the side. The recording shows that Steen, still standing in a neutral position with his arms to his sides, then turned to face Allen again, and it was at that moment that Allen threw the punch. Based on this video, we find that a rational fact finder could have determined that Allen did not have a reasonable belief that physical force was necessary to protect himself. While we note the eyewitness testimony concerning Steen's words and actions prior to the punch thrown by Allen, it is not the role of this court to reweigh the evidence or otherwise make determinations regarding witness credibility. See *State v. Figures, supra*. Accordingly, viewing the evidence in the light most favorable to the State, we find that the evidence was sufficient to sustain Allen's conviction for manslaughter.

### 5. EXCESSIVE SENTENCE

Allen further claims that the district court imposed an excessive sentence in this case. Allen was convicted of one count of manslaughter, a Class IIA felony, pursuant to § 28-305. A Class IIA felony is punishable by a maximum of 20 years' imprisonment; there is no minimum term of imprisonment. See Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2020). However, the court found Allen to be a habitual criminal under § 29-2221. Section 29-2221(1) provides that, with the exception of crimes committed in violation of particular statutes, a defendant convicted of a felony who has previously "been twice convicted of a crime, sentenced, and committed to prison . . . for terms of not less than one year each" shall be "deemed a habitual criminal" and punished by imprisonment for a mandatory minimum term of 10 years and a maximum term of 60 years. Allen's prior felony convictions and sentences were set forth in the record. Accordingly, because Allen falls within the purview of § 29-2221(1) as a habitual criminal, his conviction was punishable by a mandatory minimum term of 10 years' imprisonment and a maximum term of 60 years' imprisonment.

The district court sentenced Allen to 20 to 25 years' imprisonment with 98 days credited for time previously served. Allen's sentence is therefore within the statutory range set forth by § 29-2221(1). We next consider whether the district court abused its discretion in the sentence ordered.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Allen was 58 years old at the time of sentencing. His criminal history includes convictions for: "Larceny (Felony)" in Virginia in 1987 (56 days in jail); "Theft by Unlawful Taking/Shoplifting" in 1988 (21 days in jail); "Disorderly Conduct" in 1989 (21 days in jail);

"Assault & Battery" in 1989 (21 days in jail); "Possess Forged Instrument" in Alabama in 1989 (90 days in jail); attempted burglary in 1989 (1 year in jail); "Theft by Unlawful Taking" in 1990 (1 year in jail and $40 restitution); "Burglary" in 1991 (30 to 48 months' imprisonment); "Burglary" in 1994 (5 to 10 years' imprisonment); "Operate Motor Vehicle to Avoid Arrest" in 1994 (18 to 30 months' imprisonment); "Theft by Unlawful Taking" in 1994 (1 year's imprisonment); "Assault & Battery" in 2003 (6 months' probation and $75 fine); "Possess Controlled Substance Crack Cocaine" in 2008 (12 to 18 months' imprisonment); "Theft by Unlawful Taking" in 2010 (12 to 18 months' imprisonment); "Theft by Receiving Stolen Property" in 2012 (3 to 5 years' imprisonment); and "Possess Controlled Substance--Base Cocaine/Crack" in 2018 (6 months in jail). His record also includes convictions for driving under the influence and other traffic offenses.

The probation officer conducted a "Level of Service/Case Management Inventory" and assessed Allen as a "very high risk" to reoffend. He scored in the "very high risk range" for the criminogenic risk factor domains for family/marital, alcohol/drug problem, procriminal attitude/orientation, and antisocial pattern. Allen scored in the high risk range for the domains for criminal history, leisure/recreation, and companions. He scored in the medium risk range for the domain of education/employment. The probation officer also administered the "Substance Abuse Questionnaire" to Allen, and he scored in the "problem risk level for Alcohol and Stress Coping, as well as in the maximum risk range for Drugs, Violence, and Antisocial."

At the sentencing hearing, Allen's new counsel requested the district court to consider the minimum sentence of 10 years' imprisonment under § 29-2221(1). Counsel highlighted that Steen's death was unintentional and stemmed from "some provocation, some name calling, that hit pretty deep to . . . Allen." Counsel also described Allen's difficult history both growing up and in the present, including histories of sexual abuse as a child and drug addiction as an adult. Counsel further emphasized that Allen's criminal history consisted primarily of nonviolent offenses that were "engag[ed] in to support his . . . drug habit."

In addressing the district court, Allen expressed that he was "sorry" and "wish[ed] this had not happened." He believed at the time that it was "just a fist fight" and did not think that Steen would die from any resulting injuries. He maintained that he and Steen were friends, and he apologized to Steen's family for his death. Allen also asked the court to consider his status as a "US Veteran that suffers from major depression and PTSD."

Steen's older sister also made a statement to the district court describing the impact of Steen's death on his family.

The district court stated that it had considered the information presented to the court during trial and the sentencing hearing as well as all the sentencing factors. The court observed that "it wasn't [Allen's] intention to kill Mr. Steen, but [Allen] did have intention to hurt and assault Mr. Steen." The court addressed Allen, stating:

> You were the instigator of the violence in this case. It was obvious that whatever these comments, your testimony was that he called you a pedophile. Other evidence showed that he told you to quit talking to the girls. Regardless, those were words. But you took those words, you drove your car in an aggressive manner. Jumped out of your car to confront him. Causing the escalation of what occurred. Your actions. . . . Your decision. You did not drive up. The video showed it very clearly. You drove your vehicle into the

area where he was in an aggressive manner, jumped out in a fighting stance, to fight. It was obvious Mr. Steen was intoxicated. Did not appear to be aggressive. And as the video shows, he is turning and then you cold cock him, causing him to fall very fast without any chance of protecting himself on the way down, hitting his head, which he obviously succumbed to those major head injuries.

At that point what do you do? You don't attempt to help him. You don't call the police. You don't call for a squad. You leave him there to die. You take off.

After further noting Allen's prior criminal convictions, the court sentenced Allen as set forth previously.

Allen argues on appeal that his sentence was excessive considering the circumstances of his case. He directs this court to Neb. Rev. Stat. § 29-2260(3) (Reissue 2016) and identifies several factors that weigh in favor of a more lenient sentence. Allen first argues that he did not contemplate that his fight with Steen "would cause or threaten serious harm" to Steen, as the thought that "one punch would have caused Steen to fall and hit his head on concrete" resulting in his death was "nonexistent at the time." Brief for appellant at 26. Allen also claims that he "acted under strong provocation" and was "induced to commit the crime" by Steen's comments and conduct. *Id.* He finally argues that, although failing to establish a defense, "substantial grounds were present tending to . . . justify the crime," and Allen notes the testimony by multiple witnesses indicating that "Steen made a physical movement consistent with preparing to punch [him] just before [he] punched Steen." *Id.*

Section 29-2260(3) concerns factors that a court examines in determining whether to impose a sentence of probation or imprisonment. Given Allen's status as a habitual criminal under § 29-2221 and the corresponding mandatory minimum sentence of 10 years' imprisonment, probation was not a possibility in this case. However, to extent that those factors may weigh in favor of a more lenient sentence, including Allen's lack of intent to cause Steen's death and Steen's verbal and physical conduct, our review of a sentencing order is limited to an abuse of discretion standard. And because the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life, a sentencing court is accorded very wide discretion in imposing a sentence. *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017).

Having considered the relevant sentencing factors, including the nature of Allen's offense and his individual situation, we find that the district court did not abuse its discretion in sentencing Allen to 20 to 25 years' imprisonment.

6. INEFFECTIVE ASSISTANCE OF COUNSEL

Allen has different counsel on direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit, or in the rare case where trial counsel's error was so egregious and resulted in such a high

level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019). An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

With these governing principles in mind, we turn now to address Allen's claims of ineffective assistance of counsel.

### (a) Failure to Make Offers of Proof

Allen claims that he received ineffective assistance of counsel when his trial counsel failed to make offers of proof regarding Drake's potential testimony. As previously noted, Allen's trial counsel asked Drake what else Steen said to Allen in addition to calling Allen a "pedophile," and the district court sustained the State's hearsay objection. Allen's trial counsel subsequently asked Drake what Steen was shouting at Allen before Allen drove back to the storefront, and the court also sustained the State's hearsay objection to this inquiry. Allen asserts on appeal that "[n]either of these questions were seeking statements that would have been hearsay" and "[a] statement such as 'I'm going to whoop your ass' would . . . have been offered for the effect on Allen." Brief for appellant at 20.

Even if trial counsel performed deficiently by failing to make an offer of proof related to Drake's potential testimony, we conclude that Allen cannot establish prejudice. To the extent Allen asserts that Drake would have testified that Steen said he was "going to whoop [Allen's] ass," brief for appellant at 20, Allen testified to Steen's specific statements and the effects those statements had on him. Further, although Drake was not permitted to testify to Steen's specific statements, Drake testified that Steen appeared "intoxicated," "rowdy," and "[d]isruptive" and was also "[t]alking tough" and "running his mouth" to Allen. We also note that Allen, Montgomery, and Wright all testified regarding Steen's instigating conduct and Allen's reactions thereto. Given this backdrop of evidence, we find that Allen cannot demonstrate a reasonable probability that the trial's outcome would have been different had trial counsel made offers of proof of Drake's testimony regarding Steen's specific statements to Allen.

### (b) Failure to Depose Two Witnesses Prior to Their Deaths

Allen claims that his trial counsel was ineffective for failing to depose two potential witnesses who were present in his vehicle during the encounter with Steen. In addition to Drake, Smith and Prince were in Allen's vehicle at the time of the incident. Allen claims that Smith and

Prince "would have corroborated Allen's version of the events establishing that he was justified in using force against Steen based upon Steen's action of preparing to throw a punch." Brief for appellant at 31. Allen contends that because they were seated in different areas of the car, they would have had different views. "Had they been deposed before their deaths as requested by Allen, their testimony would have been available to be used at his trial." *Id.*

During a hearing regarding the State's first amended information held on October 19, 2020, Allen asked for a "motion for deposition on all five of [his] witnesses scheduled as soon as possible." A list included in the record indicates that Allen requested his trial counsel depose Prince, Smith, Drake, Montgomery, and Wright, and a letter signed by Allen indicated that "one of [his] witness's health [was] getting worse due to . . . seizures and falls." Allen's trial counsel subsequently filed a motion to depose Smith, Drake, and Montgomery. In an order entered on November 24, the court granted the motion and ordered the depositions be taken on December 15. During his testimony, Allen affirmed that Smith and Prince had both passed away between the date of the incident and the time of trial. Allen's brief on appeal states that the "depositions never happened." Brief for appellant at 31.

Whether trial counsel deposed Smith and Prince, or why counsel chose not to, cannot be determined on our record. Accordingly, we find the record on direct appeal is insufficient to review this claim.

### (c) Failure to Investigate Steen's Prior Head Injury

Allen claims that trial counsel was ineffective in failing to follow up on information he provided regarding a head injury sustained by Steen before the incident. In his brief on appeal, Allen alleges that he "received information prior to his trial that . . . Steen had been to the hospital earlier [on] March 25, 2020, due to sustaining a head wound from a fight he was involved in earlier that day." Brief for appellant at 32. According to Allen, his source reported that "Steen had a knot on his head from the [prior] fight." *Id.* Allen asserts that his trial counsel failed to investigate this information further, and he argues that had counsel investigated his claims, the evidence regarding the cause of Steen's death "would have been looked at differently." *Id.* Whether trial counsel received and investigated this information, or why counsel did not investigate, cannot be determined on this record. Accordingly, we find the record on direct appeal is insufficient to review this claim.

### (d) Failure to Challenge Use of Consensual Fight as Predicate Offense to Manslaughter

Allen suggests that Steen's consent "to engage in hand-to-hand combat should preclude the State from relying on a fight by mutual consent case to act as a sufficient predicate offense for manslaughter." Brief for appellant at 19. Allen argues that his trial counsel was ineffective when "[d]espite being aware of the circumstances . . . establishing the consensual nature" of the confrontation, counsel failed to "challenge the constitutionality of the manslaughter charge as applied to him." *Id.* at 34. Allen asserts that "he would have prevailed" had his trial counsel done so. *Id.*

We first point out that the State did not rely on a fight by mutual consent as a predicate offense for manslaughter. As discussed previously, a person commits manslaughter if he or she

"causes the death of another unintentionally while in the commission of an unlaw act." § 28-305(1). In Allen's case, the unlawful act forming the predicate offense for manslaughter was assault in the third degree. The instructions provided to the jury defined assault in the third degree as "intentionally, knowingly, or recklessly causing bodily injury to another person; or threatening another person in a menacing manner." Assault in the third degree is a Class I misdemeanor "unless committed in a fight or scuffle entered into by mutual consent, in which case it shall be a Class II misdemeanor." § 28-310(2). The fact that a fight may have been by mutual consent merely reduces the classification of the potential punishment from a Class I misdemeanor to a Class II misdemeanor; criminal intent is still required for conviction. Allen did not deny intentionally punching Steen; instead, he claimed he did so in self-defense, which the jury apparently found unpersuasive based on the evidence presented.

In his brief and at oral argument, Allen likened the circumstances present in this case to sporting events. He claims "[i]t is consent that prevents athletes from being charged and convicted with involuntary manslaughter when a death results in a sporting contest from a pitch hitting a player's chest or head, a prize fighter knocking out an opponent, or a football player making a violent hit that results in a death of the opposition." Brief for appellant at 18. Allen offers no legal authority in support of his "sporting contest" comparison to assault in the third degree, and we decline to address his argument since we are not dealing with a sporting event incident in the case before us.

Allen also suggests that an assault in the third degree premised on a fight by mutual consent is like "public welfare offenses which do not require a showing of mens rea," and is "insufficient . . . to support a conviction for 'unlawful act' manslaughter." Brief for appellant at 17-18. The only legal authority cited by Allen for this argument is the case of *State v. Carman*, 292 Neb. 207, 216, 872 N.W.2d 559, 565 (2015), in which the Nebraska Supreme Court held in pertinent part:

> [P]ublic welfare offenses such as traffic infractions which do not contain the element of criminal intent cannot support convictions for manslaughter. Section 28-305 is a codification of a common-law offense of manslaughter, and the existence of criminal intent is regarded as essential even though the terms of the statute do not expressly require it. There is no indication that the Legislature intended to dispense with the State's requirement to show mens rea in the predicate unlawful act for involuntary manslaughter.
>
> Unlike misdemeanor motor vehicle homicide, a charge of manslaughter cannot be supported when the predicate unlawful act is a public welfare offense which contains no mens rea. In order to sustain a conviction for involuntary manslaughter or unlawful act manslaughter under § 28-305, the State must prove beyond a reasonable doubt that the defendant acted with the requisite mens rea in committing the unlawful act.

As Allen concedes in his brief, assault in the third degree under § 28-310, regardless of whether premised on a fight by mutual consent, contains the essential element of mens rea in that the defendant must act "[i]ntentionally, knowingly, or recklessly." We therefore find that *State v. Carman, supra*, is inapplicable to this case, as assault in the third degree is not a public welfare offense without a mens rea element. Our review of Nebraska law further reveals no authority precluding an assault in the third degree committed in a fight by mutual consent from serving as a predicate offense for manslaughter.

Allen's arguments attempt to challenge the use of assault in the third degree as a predicate offense for manslaughter when the evidence may demonstrate mutual consent to fight; arguments which he claims trial counsel should have raised. However, for the reasons set forth above, the arguments would not have been successful, and trial counsel is not ineffective for failing to raise an argument that has no merit. See *State v. Martinez*, 302 Neb. 526, 924 N.W.2d 295 (2019). Or, to the extent Allen's arguments can be construed as novel legal theories, such arguments do not support a finding of ineffective assistance of trial counsel. The Nebraska Supreme Court has held that "counsel's failure to raise novel legal theories or arguments or to make novel constitutional challenges in order to bring a change in existing law does not constitute deficient performance." *State v. Sanders*, 289 Neb. 335, 343, 855 N.W.2d 350, 357 (2014). Consequently, Allen's trial counsel was not ineffective in failing to raise the arguments about mutual consent that Allen now raises on appeal.

(e) Failure to Renew Motion for Acquittal

Allen contends that trial counsel was ineffective in failing to renew a motion for acquittal after the close of evidence.

A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution, and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge the correctness in the trial court's overruling the motion for dismissal or a directed verdict, but may challenge sufficiency of the evidence for the defendant's conviction. *State v. Sanders*, 269 Neb. 895, 697 N.W.2d 657 (2005). But when a defendant makes a motion at the close of the State's case in chief and again at the conclusion of all the evidence, it is proper to assign as error that the defendant's motion to dismiss made at the conclusion of all the evidence should have been sustained. *State v. Dixon*, 306 Neb. 853, 947 N.W.2d 563 (2020). A motion to dismiss at the close of all the evidence has the same legal effect as a motion for directed verdict. *Id*. And a motion for directed verdict is simply another name for a motion for judgment of acquittal. *Id*. However styled, this type of motion made at the close of all the evidence challenges the sufficiency of the State's evidence to sustain the conviction. *Id*.

Accordingly, even though trial counsel did not renew Allen's motion for judgment of acquittal at the close of all the evidence, any such request would have failed since the evidence was sufficient to sustain Allen's conviction for manslaughter, as we previously discussed. As a result, Allen's trial counsel could not have been ineffective in failing to renew the motion.

(f) Failure to File Motion for New Trial

Allen claims that trial counsel was ineffective in failing to move for a new trial pursuant to Neb. Rev. Stat. § 29-2101 (Reissue 2016). Allen argues that the issues identified on appeal concerning the State's use of his "post-Miranda silence and a consensual fight being used as a predicate offense for manslaughter amounted to irregularities in the proceedings and errors of law." Brief for appellant at 30. He further asserts that the insufficiency of the evidence also justified a new trial.

As set forth previously, we found the evidence sufficient to sustain Allen's conviction in this case. We have likewise determined that the record indicated that the State's inquiry into

whether Allen spoke with law enforcement referred to Allen's "pre-*Miranda* silence" and did not warrant a mistrial. Further, as already described, trial counsel could not have been ineffective for failing to present a non-meritorious or novel legal theory concerning the predicate offense for Allen's manslaughter charge. Allen's trial counsel was not ineffective in failing to file a motion for new trial on these grounds.

## VI. CONCLUSION

For the reasons set forth above, we find that the district court did not err in its rulings, the evidence was sufficient to sustain Allen's conviction for manslaughter, and Allen's sentence was not excessive.

We further find that the following claims by Allen that his trial counsel was ineffective fail: failing to make offers of proof for Drake's testimony concerning Steen's statements to Allen, failing to challenge the State's use of assault in the third degree as a predicate offense for manslaughter, failing to renew the motion for a judgment of acquittal, and failing to move for a new trial. The record on direct appeal is insufficient to address Allen's remaining ineffective assistance of trial counsel claims related to counsel's failure to depose Smith and Prince and counsel's failure to further investigate whether Steen had suffered a previous head wound earlier on the day of the incident.

We affirm Allen's conviction and sentence.

AFFIRMED.