IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BORER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SHANE C. BORER, APPELLANT.

Filed September 27, 2022.    No. A-21-720.

Appeal from the District Court for Cass County: MICHAEL A. SMITH, Judge. Affirmed.

Douglas J. Amen Law, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

MOORE, RIEDMANN, and WELCH, Judges.

MOORE, Judge.

## I. INTRODUCTION

Shane C. Borer appeals from his conviction following a bench trial in the district court for Cass County of burglary, possession of methamphetamine, and theft by receiving. On appeal, he alleges that the evidence was insufficient to sustain his convictions and that he received ineffective assistance of trial counsel in various regards. Finding no error, we affirm.

## II. STATEMENT OF FACTS

### 1. CHARGES

On October 9, 2020, the State filed an information in the district court, charging Borer with two counts of burglary in violation of Neb. Rev. Stat. § 28-507 (Reissue 2016), both Class IIA felonies; possession of methamphetamine in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2020), a Class IV felony; theft by receiving stolen property with a value of more than $500 but less than $1,500 in violation of Neb. Rev. Stat. § 28-517 (Reissue 2016), a Class I misdemeanor;

- 1 -

and false reporting in violation of Neb. Rev. Stat. § 28-907 (Reissue 2016), a Class I misdemeanor. The State also alleged that Borer was a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 2016). The State later filed a motion to dismiss the second burglary count without prejudice, which was granted by the court.

## 2. TRIAL

A bench trial was held before the district court on April 14, 2021. Prior to the presentation of evidence, the court received the parties' stipulation that a glass pipe, containing white and burnt residue, seized by law enforcement from the burglary scene, among other items believed by the State to belong to Borer, had tested positive for methamphetamine. During trial, the court received a copy of a report from the Nebraska State Patrol Crime Laboratory, showing that analysis of the glass pipe had confirmed the presence of methamphetamine. The court also received various photographic exhibits offered by the State. The State presented testimony from the theft and burglary victims and from the two Cass County Sheriff's Office deputies who investigated the burglary. Borer presented additional testimony from one of the deputies.

### (a) Car Theft

In August 2020, Jacob Miller was employed by a construction company, working at a job site in Columbus, Nebraska. On August 1, Miller's vehicle (a white 2006 Chevy Cobalt) and personal items including some mail, a checkbook and check blanks, and a backpack, were stolen from the job site. Several electronics and miscellaneous hand tools were also stolen from the job site. The job site was surrounded by fencing and a locked gate. Miller's car had been parked inside of the fencing, and the gate appeared to have been "driven through" at the time of the theft. Miller reported the thefts to law enforcement that same day. Subsequently, Miller's vehicle was located with Borer at the time of Borer's arrest for the burglary discussed further below.

Law enforcement returned Miller's car to him a month or two after Borer's arrest. When the car was returned to him, Miller observed damage to the front end of the car, consistent with it having been driven through the padlocked gate at the construction site. The car's interior was "extremely messy" and contained an assortment of trash, debris, clothes, and items belonging to other people, including some blank checks, none of which belonged to Miller. Miller called the banks that issued the other individual's checks and then destroyed them. Miller did not testify as to the value of his car, but one of the deputies who investigated the burglary testified that the value of the Cobalt was "not much" but was "around $1,500." The deputy agreed that a value somewhere between $500 and $1,500 would "be fair."

A backpack containing, among other things, a glass pipe with methamphetamine residue was recovered by law enforcement at the burglary scene. At trial, Miller identified the backpack as the one that had been stolen from him. He also identified some work gloves found in the backpack as his. He testified, however, that the glass pipe was not his, that he did not "do drugs," and that the pipe was not something he had placed in the backpack. Miller stated that he paid around $25 for the backpack.

(b) Burglary, Possession of Methamphetamine, False Reporting

In August 2020, Janis Hennings and Gary DeVos resided in a two-bedroom house in Louisville, Nebraska with their dog. The house had a walk-in basement, and the exterior door leading into the basement was secured by a dead bolt. DeVos routinely took the dog out through the basement every evening around 8 p.m.

On August 8, 2020, between 8 p.m. and 8:15 p.m., DeVos let the dog out through the exterior basement door, and he locked the door once the dog was back inside. None of the items later found strewn around the basement were there at that point. Hennings got up at 2:30 a.m. on August 9 to get ready for work. According to DeVos, Hennings woke him because the dog was growling. DeVos let the dog out through the front door and returned to bed once the dog was back in the house. Hennings followed her normal morning routine while getting ready for work, but the dog "just wasn't acting normal." At some point, Hennings went into the living room and sat on the loveseat. The dog sat beside her and began barking toward the dining room behind Hennings, which frightened her. Hennings then turned off the living room light and began walking toward the kitchen where the back door to the house is located. She turned on the kitchen light, at which point she observed a man she did not know holding a bag of donuts. Hennings had purchased the donuts the day before and left them on the kitchen counter. The man was not wearing shoes. Hennings grabbed the man by the shirt, and she screamed, "Get out of my house," "There's a man in our house," and "Gary." By the time DeVos entered the kitchen, the man had pulled away from Hennings and run down the stairs into the basement, apparently leaving by the exterior basement door. DeVos checked the basement and the backyard but did not see anyone. He also told Hennings to call 911, which she did. There were numerous items strewn around the basement that did not belong to Hennings and DeVos and which had not been there the day before. They also observed evidence of someone "having cleaned up down there" as a wet towel belonging to them was found in the basement along with other items that did not belong to them.

Deputy Erik Vance of the Cass County Sheriff's Office was the first officer to respond to the call "for a burglary in progress." Vance spoke to Hennings and DeVos and inspected the basement. While examining the exterior basement door, Vance observed pry marks and noticed that the strike plate was damaged. According to DeVos, the pry marks had not been there prior to August 9, 2020. Vance also observed multiple items in the basement that did not belong to Hennings or DeVos, including two backpacks, several sets of keys, wet clothing items hanging from an I-beam, a pair of shoes which were also wet, and a wallet containing Borer's driver's license. When Vance searched one of the backpacks, he located a glass pipe containing methamphetamine residue. The wallet and license were located on a tool chest, about 20 feet away from the location of the backpack with the glass pipe. Hennings and DeVos denied that the pipe was theirs, and Hennings also testified that she did not use methamphetamine.

A drinking glass belonging to Hennings and DeVos was found in the basement. The glass was partially full of water, but they denied taking the glass from the kitchen and into the basement. Another one of their drinking glasses was later located by a neighbor outside of his residence and returned a few days after the burglary incident. Hennings testified that she had not given the neighbor the glass to use; both Hennings and DeVos denied having placed the glass outside of the neighbor's residence.

While Vance was with Hennings and DeVos, Deputy Ryan Murphy observed a man matching the burglary suspect's description at an intersection in Louisville about one block from the residence of Hennings and DeVos. The man was standing next to a white Chevy Cobalt with no license plates. He was not wearing any shoes and was loading items into the trunk of the car. Murphy approached the man and noticed that the vehicle was full of clothing and electronics. When asked where he was staying, the man pointed in the general direction of the residence of Hennings and DeVos, and he stated that "a female named Hannah" was allowing him to stay there. He also stated that someone had stolen his shoes. Murphy asked to see the man's driver's license, and the man said that it was in the car's center console. When Murphy entered the car to try to retrieve the license, he noticed that the "VIN plate on the left side of the vehicle" was covered by a note card, which he testified is a tactic used by car thieves to try to hide the identification of a vehicle "commonly when they're parked without plates." Murphy then opened the driver's side door, where he located "the secondary VIN." Upon calling dispatch to check the VIN, Murphy learned that the car had been reported stolen in Columbus. The man's driver's license was not in the car. The man was ultimately identified as Borer via the driver's license located in the basement of the Hennings and DeVos residence. Murphy agreed, when asked, that Borer "lawyered up pretty quick and didn't want to answer any questions."

Once Vance learned that Murphy had located a suspect, he transported Hennings to Murphy's location where she identified Borer as the man she had seen in her kitchen. She also identified Borer at trial as the man she had seen in the house. Hennings and DeVos both testified that they did not know a person named Hannah.

In addition to searching the items believed to be Borer's that were found in the basement, Vance also searched the car. Vance did not locate a crowbar in either the basement or the car. Vance did not locate any "burglar's tools" that might be used to pick a lock, other than some knives that were found in the car. Vance did not recall finding a key matching the key for the house with the "many keys" found among the possessions in the basement. Vance agreed, however, that burglars often carry multiple keys which they can sometimes use to open doors by using them as "bump keys." He explained that a key cut with "a similar height" in relation to the lock tumbler as the actual key might be used to open a locked door.

A few hours after law enforcement left the house, Hennings and DeVos found their camera sitting on top of the desk in their spare bedroom. The camera had been inside a desk drawer the day before, and neither one of them had removed it.

### 3. CONVICTION, ENHANCEMENT, AND SENTENCING

The district court found Borer guilty of burglary, possession of methamphetamine, and theft by receiving stolen property (more than $500 but less than $1,500). It found him not guilty of false reporting, observing that Borer's statement about the location of his driver's license "could've just been an error rather than, simply, an untruth." Following subsequent enhancement and sentencing hearings, the court found that Borer was a habitual criminal as alleged in the information, and it sentenced him to imprisonment for 12 to 15 years for burglary, 10 to 10 years for possession of methamphetamine, and 1 year for theft by receiving. The court ordered that Borer's sentences run concurrently and gave Borer 253 days of credit for time served.

## III. ASSIGNMENTS OF ERROR

Borer asserts, consolidated and restated, that (1) the district court erred in finding sufficient evidence to convict him of burglary, possession of methamphetamine, and theft by receiving, and (2) his trial counsel was ineffective in failing to (a) advise Borer of the deadline for a new trial motion, (b) call Borer as a witness at trial, (c) investigate, find, or subpoena Hannah, (d) test items for DNA or fingerprints, and (e) move for a mistrial.

## IV. STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022).

## V. ANALYSIS

### 1. SUFFICIENCY OF EVIDENCE

#### (a) Burglary

Borer asserts that the evidence was insufficient to support his conviction for burglary. He argues that the State did not prove he entered the residence with the intent to steal property of any value or that he entered with the intent to commit a felony, namely, possession of methamphetamine.

"A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value." § 28-507(1). Burglary does not require an actual theft or asportation of property. *State v. Matz*, 226 Neb. 581, 412 N.W.2d 852 (1987). A forcible and unauthorized nocturnal entry into a building known to contain property is a circumstance from which a fact finder may infer an intent to steal. See *State v. Nero*, 281 Neb. 680, 798 N.W.2d 597 (2011). Intent sufficient to support a conviction for burglary may be inferred from the facts and circumstances surrounding an illegal entry. *Id.*

The evidence shows that while getting ready for work in the early morning hours of August 9, 2020, Hennings discovered a man she did not know in her kitchen holding a bag of donuts she

had purchased and left out on the counter. When confronted, the man, who was not wearing shoes, fled through the basement and out the exterior basement door, which showed pry marks and other damage that had not been there prior to August 9. Items not belonging to Hennings and DeVos, including the man's driver's license, were discovered in the basement. Hennings identified Borer at trial as the man she saw in her house. There was evidence that someone other than Hennings or DeVos had cleaned up while in the basement as some of the clothing items left behind were damp, as was a towel belonging to Hennings and DeVos. A drinking glass with some water in it was also found in the basement. Hennings and DeVos did not leave the towel in the basement or remove the glass from the kitchen and take it to the basement. Another one of their drinking glasses was later discovered outside a neighbor's residence and a camera in their spare bedroom had been moved. There was evidence that Hennings and DeVos did not place the second drinking glass outside or move the camera. We find that, after viewing the evidence in the light most favorable to the State, a rational finder of fact could find, through circumstantial evidence presented here, that Borer broke and entered the residence of Hennings and DeVos with the intent to steal their property. And, as discussed further below, the evidence was sufficient to support Borer's conviction for the felony of possession of methamphetamine. Viewing the evidence in the light most favorable to the prosecution, we further determine that a rational trier of fact could find that Borer entered the residence with the intent to commit a felony.

(b) Possession of Methamphetamine

Borer does not challenge that a small amount of methamphetamine residue was found in the basement of the Hennings and DeVos residence, but he argues that the evidence was insufficient to show that he knowingly or intentionally possessed methamphetamine.

"A person knowingly or intentionally possessing a controlled substance . . . shall be guilty of a Class IV felony." § 28-416(3). A person possesses a controlled substance when he or she knows of the nature or character of the substance and of its presence and has dominion or control over it. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017). Possession can be either actual or constructive, and constructive possession of an illegal substance may be proved by direct or circumstantial evidence. *Id.*

The evidence shows that there was methamphetamine residue in a glass pipe found in a backpack left in an area where Borer had recently been. Mere presence at a place where a controlled substance is found is not sufficient to show constructive possession. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). Instead, the evidence must show facts and circumstances which affirmatively link the defendant to the controlled substance so as to suggest that the defendant knew of it and exercised control over it. See *id.*

In this case, Borer was not in actual possession of the methamphetamine, so the question is whether there is sufficient evidence from which a trier of fact could reasonably infer he was in constructive possession of it. In other words, could the trier of fact reasonably infer he was aware of the methamphetamine's presence and had dominion or control over it? Under the circumstances of this case, we conclude that there was sufficient evidence for the trial judge to infer that Borer was aware of the presence of methamphetamine in the residence and had dominion or control over it.

Borer was the only unauthorized person seen inside the residence of Hennings and DeVos and then near the Cobalt vehicle shortly after he fled the residence. Both the backpack in which the methamphetamine was found and the vehicle were stolen at the same time from Miller. Although the car was filled with numerous items, the backpack was one of the items taken into the residence and the pipe clearly had been used to smoke methamphetamine. Miller, Hennings, and DeVos all denied knowledge of the pipe and its contents. Borer points to evidence that another person may have also been in the residence. He observes that more than one backpack was found in the basement, some makeup items were found in the bag where the pipe was located, and more than one drinking glass had been removed from the kitchen. He also notes that his wallet and driver's license were located approximately 20 feet away from the backpack where the pipe was found and that he was not in the residence at the time that any of these items were located.

In his arguments in support of this assignment of error, Borer essentially asks us to resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, but these are matters for the finder of fact. See *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022). And, the State is not required to disprove every hypothesis of nonguilt in order to convict Borer using circumstantial evidence. See *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016).

When the evidence in this case is viewed in the light most favorable to the State, a reasonable inference from the circumstantial evidence outlined above is that Borer, who was seen in the residence shortly before discovery of the methamphetamine in the basement, whose driver's license was also discovered in the basement, and who was found next to a vehicle stolen at the same time as the backpack where the methamphetamine was found, knew of the presence of the methamphetamine and that he exercised control over it. This assignment of error fails for the reasons stated above.

## (c) Theft by Receiving

Borer challenges the sufficiency of the evidence to prove he had knowledge or a belief that the Cobalt vehicle was stolen. He also argues the evidence was insufficient to prove the car's value.

### (i) Knowledge

"A person commits theft if he receives, retains, or disposes of stolen movable property of another knowing that it has been stolen, or believing that it has been stolen, unless the property is received, retained, or disposed with intention to restore it to the owner." § 28-517. The central focus of the crime is on the accused's subjective knowledge or belief, and knowledge, like intent, may be inferred from the circumstances surrounding the act. See *State v. Almasaudi*, 282 Neb. 162, 802 N.W.2d 110 (2011).

The evidence shows that immediately after fleeing the scene of the burglary, Borer was found loading items into the trunk of a car that had recently been stolen. The vehicle, although licensed, was not displaying license plates, and the VIN on the left side of the vehicle was covered with a note card, a common tactic of car thieves to conceal a stolen vehicle's identification. One of the items located in the basement at the burglary scene was a backpack that had been stolen at the same time as the car, and the car contained items, including blank checks, that belonged to other people. The circumstantial evidence was sufficient to support a conclusion that Borer knew the car had been stolen.

*(ii) Value*

Borer was charged with committing theft by receiving stolen property with a value of more than $500 but less than $1,500, a Class I misdemeanor. § 28-517. While Miller did not testify as to the car's value, one of the deputies placed its value at around $1,500 or between $500 and $1,500, which value was adopted by the district court and is within the grade of offense with which Borer was charged.

Neb. Rev. Stat. § 28-518(8) (Reissue 2016) provides that "[i]n any prosecution for theft under sections 28-509 to 28-518, value shall be an essential element of the offense that must be proved beyond a reasonable doubt." However, although § 28-518(8) requires some value to be proved as an element of a theft offense, the statutory language does not require proof of a particular threshold value. *State v. Duncan*, 294 Neb. 162, 882 N.W.2d 650 (2016).

An item's market value at the time of the theft may be established by either direct or circumstantial evidence, and it presents a question of fact to be resolved by the fact finder. *State v. Dixon*, 306 Neb. 853, 947 N.W.2d 563 (2020). When a fact finder determines the value of property in a theft case, an appellate court will not set aside the finding unless it is clearly erroneous. *Id.*

Here, Murphy testified based on his training and experience that the Cobalt vehicle was worth around $1,500. Borer argues that there was "scant foundation" for Murphy's opinion, but he did not assign error the district court's admission of Murphy's testimony as to the car's value. Brief for appellant at 20. The circumstantial evidence here was sufficient to establish the value of the vehicle. This assignment of error fails.

*(iii) Sufficiency*

Borer's arguments about the sufficiency of the evidence on appeal involve the credibility of various witnesses and the weight of certain evidence, and as noted above, this court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, which matters are for the finder of fact. See *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022). There was sufficient evidence from which the trial judge could reasonably conclude that Borer knew the car had been stolen. And, we conclude, as did the district court, that Murphy's testimony was sufficient to support the court's finding regarding the value of the care for purposes of § 28-518(8). In sum, the court did not err in finding the evidence sufficient to support Borer's conviction for theft by receiving stolen property.

2. INEFFECTIVE ASSISTANCE OF COUNSEL

Borer has different counsel on direct appeal than he did at trial. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record; otherwise, the issue will be procedurally barred in a subsequent postconviction proceeding. *State v. Warner*, 312 Neb. 116, 977 N.W.2d 904 (2022).

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022). The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

Conversely, an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id.*

The necessary specificity of allegations of ineffective assistance of trial counsel on direct appeal for purposes of avoiding waiver requires, at a minimum, allegations of deficient performance described with enough particularity for an appellate court to make a determination of whether the claim can be decided upon the trial record and also for a district court later reviewing a potential petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Drake*, 311 Neb. 219, 971 N.W.2d 759 (2022). Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *State v. John*, 310 Neb. 958, 969 N.W.2d 894 (2022).

(a) Failure to Advise of Deadline for New Trial

Borer first asserts that his trial counsel was ineffective in failing to advise him of the deadline for a new trial motion. He cites as grounds for a new trial, misconduct of the prosecuting attorney and insufficiency of the evidence. However, Borer has not shown deficient performance nor can he establish prejudice. As set forth above, the evidence was sufficient to sustain Borer's convictions. He has not shown that a new trial motion would have been successful in that regard. And, as discussed further below, in connection with Borer's allegation that his counsel was deficient in failing to object to the prosecutor's reference to his silence upon further questioning by the deputies, in a bench trial there is a presumption that the trial court, sitting as the fact finder, disregards inadmissible evidence. See *State v. Craigie*, 19 Neb. App. 790, 813 N.W.2d 521 (2012). See, also, *State v. Anders, supra* (in case tried to court without jury, there is presumption that trial court, in reaching its decision, considered only evidence that is competent and relevant). This assignment of error fails.

(b) Failure to Call Borer as Witness

Next, Borer asserts that his trial counsel was ineffective in failing to call him as a witness at trial. There is nothing in the record to indicate whether Borer's counsel considered calling him as a witness or why he decided not to do so. The record is insufficient to resolve this claim on direct appeal.

### (c) Failure to Investigate, Find, or Subpoena Hannah

Next, Borer asserts that his trial counsel was ineffective in failing to investigate, find, or subpoena Hannah. The record shows that Borer told law enforcement that he had been given permission to stay at the residence where the burglary occurred by a woman named "Hannah." It is sufficient that appellate counsel give on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The appellate court does not need specific factual allegations as to what the person or persons would have said, which will not be found in the appellate record. *Id.*

Although Borer did not provide a last name or any further description from which this woman might be identified later, we find that Borer has sufficiently alleged this claim to preserve it for purposes of postconviction.

### (d) Failure to Test Items for DNA or Fingerprints

Next, Borer asserts that his trial counsel was ineffective in failing to test various items for DNA or fingerprints. The record does not explain why Borer's trial counsel did not request such testing. Therefore, we cannot address this claim on direct appeal.

### (e) Failure to Move for Mistrial

Finally, Borer asserts that his trial counsel was ineffective in failing to object and move for a mistrial when the prosecutor elicited testimony from Murphy that Borer had invoked his right to counsel. In a case tried to the court without a jury, there is a presumption that the trial court, in reaching its decision, considered only evidence that is competent and relevant. *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022). In the absence of evidence to the contrary, the presumption is that a judge will disregard evidence that should not have been admitted. *State v. Smith*, 269 Neb. 773, 696 N.W.2d 871 (2005). There is no evidence in this case that the district court relied on improper testimony to convict Borer. Accordingly, Borer cannot show that his trial counsel was ineffective for failing to move for a mistrial based on that testimony.

### VI. CONCLUSION

The evidence was sufficient to support Borer's convictions for possession of methamphetamine, burglary, and theft by receiving. And, as indicated above, Borer's claims of ineffective assistance of trial counsel have either not been sufficiently pled, are refuted by the record, or the record is insufficient to review them on direct appeal.

AFFIRMED.